## J. H. WRIGHT v. C. W. DORMAN.*

### (*Nashville.* December Term, 1926.)

Opinion filed, March 12, 1927.

1. **PRINCIPAL AND SURETY.** **Discharge of principal in bank-ruptcy. Release of surety.**

Where the principal has been discharged in bankruptcy so that no money judgment or decree, could have been rendered against him on a bond for the performance of "the judgments and decrees of court in this cause, then this obligation to be void, otherwise, to be and remain in full force and effect;" the contingency upon judgment being rendered, upon which the liability of the surety rests, could not occur. (Post, p. 196-7.)

Citing: Martin v. Kilbourn, 59 Tenn. (12 Heisk.), 331; Martin v. Massey, 135 Tenn., 335; 3 R. C. L., p. 341; Wolf v. Stix, 99 U. S., 1; 25 L. Ed. 309; Able v. Payne, 7 Bush. 344.

Citing and explaining: Martin v. Massey—supra, sec. 16, 30 State at L. of U. S., 550 Ch. 54.

Citing and distinguishing: Brown & Brown Coal Co. v. Antezak, 164 Mich., 110; Anno. Cas. 1912 B., 778; Brown W. & Co. v. Edward Rose Co., 210 Ala., 488; House v. Schnadig, 235 Ill., 301, 138 Ill., App., 498.

2. **SUPREME COURT PRACTICE.** **Stipulation as to facts in trial courts. Not to be first questioned on appeal.**

This court must try every cause upon the record, certified from the lower court. The stipulation of facts not challenged on the hearing, in court below, nor questioned there, cannot be made for the first time on appeal. (Post, p. 195.)

---

*As to when will discharge of principal in bankruptcy release surety on a bond given by the principal in an action at law, see annotation in 14 L. R. A. (N. S.), 507; 28 L. R. A. (N. S.), 234; 41 A. L. R., 477; 3 R. C. L., 342; 6 R. C. L., Supp., 173.

3. **EQUITY, PLEADING AND PRACTICE.** Substance, not forms, control.

Equity heeds not forms, but strives to reach the substance in adjudication the equities of parties, and this is true in matters of pleading also; as where, a motion for new trial, not authorized by the practice, may be treated, as a motion to rehear. (Post, p. 194.)

4. **APPEAL IN EQUITY.** Construction, chapter 119 Acts, 1917.

The Act of 1917, chapter 119, does not destroy the long recognized distinction between appeals from a law court and appeals from the chancery court in causes tried according to the forms of chancery. (Post, p. 195.)

Citing and approving: Watkins, Trustee v. Sedberry et al., ante, p. 148.

5. **JUDGMENT.** Appeal. Not perfected.

The power of trial court over its judgment, no appeal having been perfected, does not expire for thirty days from the rendition thereof. (Post, p. 194.)

6. **SAME.** Motion for new trial or petition to rehear. Suspension of judgment.

The entry of a motion for a new trial or petition to rehear within thirty days after judgment suspends a judgment for the purposes of disposing of the motion; and such motion seasonably entered may be disposed of after the expiration of thirty days, when the court finds an opportunity to do so. (Post, p. 194.)

Citing: Railroad v. Ray, 124 Tenn., 16; Dunn v. State, 127 Tenn., 267; Feldman v. Clark, 153 Tenn., 373.

---

*Headnotes 1. Equity, 21 C. J., Section 737; 2. Equity, 21 C. J., section 740; 3. Equity, 21 C. J., section 876; 4. Stipulations, 36 Cyc., p. 1292; 5. Appeal and Error, 3 C. J., section 763; 6. Bankruptcy, 7 C. J., section 726 (Anno).

---

FROM DAVIDSON.

---

Appeal from the Chancery Court of Davidson County. —HON. JOHN R. AUST, Chancellor.

ROBT. L. SADLER, for Wright.

M. P. ESTES and J. G. LACKEY, for Dorman.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This appeal involved the question of the liability of a surety upon a bond taken in certain proceedings below. The Chancellor discharged the surety.

In 1920 J. H. Wright and C. W. Dorman entered into a trade whereby Wright was to convey to Dorman a farm in Franklin County, and in exchange for the farm Dorman was to convey to Wright certain property in Nashville, including a grocery store. Wright took possession of the grocery store but the parties got into a dispute about that time and the trade was not completed. No effort was made to comply with the provisions of the Bulk Sales Law, and certain creditors of Dorman attached or threatened to attach the stock of groceries and Wright paid off these creditors.

Dorman brought a replevin suit in the circuit court at Nashville whereby he regained possession of the stock of groceries, pending the suit. Dorman did not, however, reimburse Wright for the sums advanced by Wright to pay Dorman's mercantile creditors.

The original bill was filed by Wright against Dorman asking primarily for a specific performance of the contract. If specific performance could not be decreed, the bill sought a judgment against Dorman for the aggregate amount of store bills paid as aforesaid, and that complainant "recover same out of the proceeds of the sale of the personal property placed in the hands of the receiver." The bill prayed for a receiver for the

grocery outfit and for an injunction against the prosecution of the replevin suit. The injunction was awarded by the Chancellor and a receiver appointed to take charge of the grocery stock, to sell the perishable goods therein, proceed to collect the accounts, and to hold the remainder of the stock subject to further orders of the court.

A demurrer to this bill was interposed by Dorman and the demurrer sustained in so far as the bill sought specific performance. The bill, however, was held good in the other aspect. This decree was entered July 16, 1920. The court expressly declined to discharge the receiver. On the same day, a consent order was entered that the receiver might be discharged and the grocery concern turned back to Dorman upon Dorman "excuting a bond for $2,000 with good security conditioned to faithfully perform the judgment of the court." On the next day, July 17, 1920, a bond was executed by Dorman and his sureties, L. C. Estes and Mrs. Nora L. Dorman, conditioned as just stated.

When this bond was filed the bill then stood as one seeking a money judgment against Dorman and the bond secured the faithful performance, that is, the satisfaction, of any such judgment that might be rendered against him.

Some depositions were taken but the progress of the case was quite slow. Finally, on July 13, 1923, upon depositions taken and upon oral testimony by consent, the Chancellor heard the cause and rendered a decree against Dorman and his sureties for the amount of the accounts paid by Wright to Dorman's mercantile creditors with interest from the filing of the bill, to-wit, the sum of $644.97. Dorman and his sureties excepted to this decree and prayed an appeal to the Court of Civil Ap-

peals, which was granted and they were allowed thirty days in which to execute their appeal bond.

This appeal allowed by the decree of July 13, 1923, was not perfected. On August 11, 1923, a motion for a new trial was entered in the case by Dorman and his sureties. This motion was taken under advisement by the Chancellor and a new trial granted on August 17, 1923.

No other steps were taken in the case until January, 1926. At that time L. C. Estes, one of the sureties on the aforesaid bond, filed an amended answer setting out that Dorman had filed a petition in bankruptcy, and had listed his indebtedness to Wright in the bankruptcy court, and had received a discharge from all his debts, including his indebtedness to Wright, January 13, 1925. It was submitted that this discharge of Dorman released his sureties on said bond.

Dorman himself filed an amended answer at the same time setting out his petition in bankruptcy and discharge, as averred in the amended answer of Estes. Mrs. Dorman, the other surety seems to have died pending this litigation and we assume the cause has been abated as to her.

On January 28th Wright filed a replication to the amended answers just mentioned and joined issue upon them. He also averred that his claim against Dorman and his sureties was not such a claim as was covered by a discharge in bankruptcy, that he had no notice of the bankruptcy proceedings, and that Dorman had made a new promise after his discharge.

A few days later a stipulation of facts was filed in the cause purporting to be signed by counsel for all the parties, and upon this stipulation the case was again heard by the Chancellor and the bill dismissed May,

14,. 1926. The first assignment of error contains the propositioin that the Chancellor was without authority to grant a new trial in the cause August 17, 1923, that the decree of July 13, 1923, giving judgment against Dorman and his sureties is still in full effect, and that subsequent proceedings in the case were void.

This assignment of error must be overruled. While an appeal was prayed and granted in the decree of July 13, 1923, and thirty days allowed in which to make bond, no bond was ever made, the appeal was not perfected, and the case remained in the chancery court. The power of the court over the judgment, no appeal having been perfected, did not expire for thirty days from the rendition thereof. Chapter 65, Acts of 1885.

The motion for a new trial was filed or entered, as appears from the Chancellor's decree, August 11, 1923. It is well settled that the entry of a motion for a new trial within thirty days after judgment suspends a judgment for purposes of disposing of the motion; and that a motion seasonably entered may be disposed of after the expiration of thirty days, when the court finds an opportunity to do so. *Railroad* v. *Ray,* 124 Tenn., 16; *Dunn* v. *The State,* 127 Tenn., 267; *Feldman* v. *Clark,* 153 Tenn., 373. We think a petition to rehear entered within thirty days from judgment or decree, likewise suspends said judgment or decree, pending the disposition of the petition to rehear.

It is insisted by counsel that a motion for a new trial is unknown to Chancery practice in a case like this and that the motion for a new trial herein should not have been considered. The Chancellor no doubt treated this motion as a petition to rehear and we think he was right in so doing.

The profession has been in doubt as to the proper practice under Chapter 119, of the Acts of 1917, permitting the trial of cases in the Chancery Court upon oral testimony by consent of the parties—whether or not a motion for a new trial was necessary. This question was only definitely settled at the last opinion day of this court by the case of *Watkins* v. *Sedberry*. It was there held that such a motion was not necessary, but in the case before us we think the motion operated as a petition to rehear.

It is next said that the Chancellor erred in finding that C. W. Dorman had gone into bankruptcy, scheduled or listed complainant as a creditor, and that Dorman had received a discharge in bankruptcy from all his debts.

We think the stipulation of facts refutes this contention. Paragraph 6 of the stipulation upon which the Chancellor tried the cause is as follows:

"On November 23, 1923, C. W. Dorman filed a petition in bankruptcy in the District Court of the United States at Nashville, Tennessee, and scheduled in said proceedings the claim sued on in this cause, and in his schedule of debts listed J. H. Wright in order to discharge his liability to said Wright as to all matters sued on in this cause, and thereafter on January 13, 1925, he received his discharge in bankruptcy, a certified copy of which is filed herewith as a part of this stipulation, and made part hereof as Exhibit 1 hereto, which is admitted in evidence as having been duly proven."

Counsel for Wright in this court challenge the authority of other counsel who appeared for Wright below and signed said stipulation on Wright's behalf. This court, however, must try every cause upon the record certified from the lower court. The stipulation of facts was not challenged on the hearing before the Chancellor and no

question there made as to the authority of counsel to enter into such stipulation for Wright. Such an objection cannot be made in this court for the first time. If there had been any fraud in the proceedings below, a prompt application to the Chancellor would have insured relief. Such charges come too late here.

The final and the chief contention of Wright is that the discharge in bankruptcy of Dorman did not release the sureties on the bond heretofore described.

As stated, this bond was executed pursuant to an order of the Chancellor, when the grocery outfit, impounded and in Receivers hands upon Wright's bill, was turned back to Dorman. Following the Chancellor's order the bond recited:

"Now, if the said C. W. Dorman shall perform faithfully the judgments and decrees of court in this cause, then this obligation to be void, otherwise to be and remain in full force and effect."

Dorman having been discharged from all his indebtedness no money judgment or decree could have been rendered against him in the cause. The liability of the sureties was conditioned upon Dorman's faithful performance of "the judgments and decrees of Court in this cause." No judgment except a money judgment could have been rendered against Dorman in the state of the pleadings, and if the rendition of such a judgment was defeated by the bankruptcy of Dorman, the contingency upon which the liability of the surety rested, could not occur.

In *Martin* v. *Kilbourn*, 59 Tenn. (12 Heisk.), 331, Kilbourn obtained a judgment against Allen before a Justice of the Peace upon a note. Allen appealed to the circuit court, executing an appeal bond with Martin as his surety. The condition of the bond was that Allen

should prosecute his appeal with effect or otherwise comply with and perform the judgment of the court. Prior to the hearing in the Circuit Court, Allen obtained a discharge in bankruptcy, which he pleaded, and judgment was rendered in his favor in the Circuit Court, but the court rendered judgment against Martin, the surety, for the amount of the Magistrate's judgment and costs. This action of the circuit judge was reversed by this court on the surety's appeal. The court said:

"We know of no principle on which judgment could be rendered against the surety, unless there is something in the Bankrupt Law which controls the case. It is there provided that no discharge of the bankrupt shall release, discharge, or affect, any person liable for the same debt, either as partner, joint contractor, endorser, surety, or otherwise. Martin never was liable on the debt with Allen, in any character. The appeal vacated the judgment, and Martin was ony liable in the event that judgment should be rendered against Allen in the circuit court. This was not done. On the contrary, Allen prosecuted his appeal with effect. Martin was no longer liable on his bond. *Able* v. *Payne,* 7 Bush, 344."

The authority of this case was recognized in *Martin Furniture Co.* v. *Massey,* 135 Tenn., 338. In the later case there was an injunction bond conditioned to "pay such damages and costs as may be awarded by the chancery court in dismissing the bill." Although the complainant suing out the injunction was discharged in bankruptcy, his surety was held liable on the injunction bond. That bond was not conditioned upon a judgment against the complainant, but only upon the dismissal of complainant's bill.

The conclusion reached in *Martin* v. *Kilbourn,* supra, is well supported elsewhere.

"In determining whether a surety in a bond given in a proceeding at law is released by the discharge in bankruptcy of his principal, it is necessary to consider the nature of the liability assumed by the surety. If this liability is not contingent upon a judgment in the first instance against the principal, it is not affected by the discharge of the latter; but where a judgment against the principal is necessary in order to fix the liability of his surety, if the discharge in bankruptcy is a bar to the rendering of a judgment against him in the proceeding in which the bond was given, generally no judgment can be rendered against his sureties." 3 R. C. L., p. 341.

The Supreme Court of the United States has observed:

"The cases are numerous in which it has been held, and we think correctly, that if one is bound as surety for another to any judgment that may be rendered in a specified action, if the judgment is defeated by the bankruptcy of the person for whom the obligation is assumed, the surety will be released. The obvious reason is that the event has not happened on which the liability of the surety was made to depend." *Wolf* v. *Stix,* 99 U. S., 1, 25 L. Ed., 309.

There is a conflict of authority as to the effect of the principal's bankruptcy upon the liability of a surety on an appeal bond as will appear from Note 41, A. L. R., 477. Some of this conflict is doubtless due to varying provisions of the bonds considered. We see no reason, however, to depart from previous holdings of this court.

Section 16 of the present Bankruptcy Act (30 Stat. at L., 550, chapter 541), provides that "the liability of a person who is a co-debtor with, or guarantor, or in any manner a surety for a bankrupt shall not be altered by the discharge of such bankrupt."

The foregoing language has been said to be the same in effect as the language of the Bankruptcy Act of 1867, considered in *Martin* v. *Kilbourn,* supra. *Brown & Brown Coal Co.* v. *Antezak,* 164 Mich., 110, Anno. Cas., 1912B, 778.

In *Brown W. & Co.* v. *Edward Rose & Co.,* 210 Ala., 488, and *House* v. *Schnadig,* 235 Ill., 301, affirming 138 Ill. App., 498, it is said that Section 16 above refers to co-debtors, guarantors, or sureties for the bankrupt on the original debt from which release is given by the discharge and not to the liability of a surety for the bankrupt on an appeal bond.

The liability of a surety on a bond such as the one before us is not an unconditional undertaking on behalf of another. Such a bond is an undertaking to secure an obligation of another, if that obligation is ripened into judgment. The surety's undertaking is contingent upon judgment being rendered against his principal. Discharge of the principal in bankruptcy does not alter the surety's liability but defeats the contingency upon which the surety's liability accrues.

The record sent up is inadequate to show that the indebtedness of Dorman to Wright was an indebtedness not dischargeable in bankruptcy.

Affirmed.