COCHRAN *v.* NATIONAL LIFE & ACCIDENT INS. CO.

(*Nashville,* December Term, 1933.)

Opinion filed January 13, 1934.

H. M. VAUGHN, of Chattanooga, for plaintiff in error.

SIZER, CHAMBLISS & KEFAUVER, of Chattanooga, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

This is a suit on a contract of industrial life and disability insurance, to recover its stipulated cash or surrender value of $9.35. The suit was dismissed in the circuit court, upon the finding of that court that the plaintiff had not made demand for the surrender value within the time prescribed by the contract. The case is before us on the plaintiff's appeal in the nature of a writ of error.

Decision of the controversy turns upon the proper construction of the word "default," as used in the contract with reference to the payment of weekly premiums; whether the date of default was the date the first unpaid premium was due, or four weeks later when four weekly premiums were in arrears.

The material provisions of the contract are as follows:

"The first year's insurance under this policy is term insurance. Thereafter a reserve shall be accumulated upon the basis of the Actuaries' Table of Mortality with four per cent interest, and in the event of default in the payment of any premium when due, after premiums for three full years have been paid, this Policy, without action on the part of the insured, will be extended for the

full amount of the natural death benefit only, for such length of time as the reserve hereunder at the anniversary immediately preceding the date of such default, less two and one-half per centum of the amount insured, will purchase according to the Actuaries' Table of Mortality with four (4) per cent interest; or in lieu thereof, provided premiums have been paid for ten full years, the Company will pay to the insured, upon written application therefor and the legal surrender of this Policy within sixty days from date of such default, as a cash surrender value the amount otherwise available for the purchase of extended insurance as aforesaid.

. . . . . .

"This Policy shall not lapse for nonpayment of premiums until the premiums for four (4) weeks are in arrears; the insured, however, shall not be entitled to sick or accident benefits when premium payments are in arrears for two (2) weeks or more, and the subsequent payment of such arrears shall not entitle the insured to benefits for sickness or disability beginning or occurring during the period of such arrears. Should the insured die when the premium payments on this Policy are four (4) weeks or more in arrears this Company shall not be liable for any sum under this Policy except as otherwise expressly provided herein."

No premiums were paid by plaintiff after June 13, 1932. The premium due June 20 and those subsequently due were unpaid. Demand for the surrender value was made on August 26, which was more than sixty days from June 20, but within sixty days from the due date of the fourth unpaid premium.

A diligent search by counsel and by the court has not disclosed a decision directly in point construing the

phrase "date of default." The usual provision of insurance contracts, as revealed by the cases, seems to be to limit the right to demand the surrender value to a specified time from the "due date" of the first unpaid premium, or from the date the policy "lapsed."

The contract before us, being a contract of industrial insurance, written in 1920, is not one which the statute required should authorize payment of premiums within a grace period after the due dates. Acts 1907, chapter 457; *Life & Casualty Ins. Co.* v. *King*, 137 Tenn., 685, 195 S. W., 585. The parties were therefore free to contract with respect to the date of default in the payment of the premiums.

The stipulation of the contract, that it should not lapse for nonpayment of premiums "until the premiums for four (4) weeks are in arrears," is so phrased as to direct attention to the fact that a weekly premium is "in arrears" if not paid when due, and serves only to postpone the insurer's right to declare a forfeiture, for nonpayment of premiums, until four premiums are in arrears.

The contract, in the paragraph first quoted hereinabove, provides for automatic extended insurance "in the event of default in the payment of any premium when due;" but in the same paragraph the insured is given the option to require the payment to him of the cash surrender value of the contract upon his demand "within sixty days from date of such default." Such default is the default previously referred to in the same paragraph; that is, default in the payment of a premium "when due." This construction is the only reasonable construction which the language permits, in view of the other provision characterizing a premium as "in ar-

rears'' if not paid when due. The provision against lapse for nonpayment of premiums until four payments are in arrears does not, we think, justify a ruling that, under the terms of the contract, a single payment is not in default if not paid when due.

We rule, therefore, that plaintiff's option to demand the cash surrender value of the contract was lost when he failed to make the demand within sixty days of his default in the payment of the first unpaid premium, due June 20, 1932. A subsequent payment, before four premiums were in arrears, would have reinstated plaintiff's right to continue the insurance as before, but, when no such subsequent payments were made, the contract stood, with respect to extended insurance and the option to demand the cash surrender value, as in default of premium payment from and after June 20.

This case was heard by the circuit court, without a jury, on February 1, 1933, and judgment was rendered on that day for the plaintiff. On March 24, 1933, defendant's motion for a new trial was sustained, the former judgment was vacated, and judgment was rendered for the defendant, from which this appeal in error is prosecuted. By motion, plaintiff insists that the original judgment of February 1st became final by the lapse of thirty days without minute entry on the defendant's motion for a new trial, and that the subsequent proceedings in the circuit court were *coram non judice* and void. *Ellis* v. *Ellis*, 92 Tenn., 471, 22 S. W., 1.

The transcript contains a copy of the rule docket of the circuit court, reciting that defendant's motion for a new trial was filed on February 4, 1933, three days after the original judgment was rendered. The filing of the motion within the thirty days operated to prevent the judgment

from becoming final during the term, so long as the motion so filed remained undisposed of. *Life & Casualty Ins. Co.* v. *Baber,* 166 Tenn. 10, 57 S. W. (2d), 791. The authorities cited in that opinion sustain this ruling, to which may be added *Wright* v. *Dorman,* 155 Tenn., 189, 291 S. W., 1064; *Johnston* v. *Phillips,* 4 Higgins (4 Tenn. Civ. App.), 662, has not been followed by this court, and, in so far as it conflicts with *Life & Casualty Ins. Co.* v. *Baber, supra,* is not approved. *Chattanooga Dayton Bus Line* v. *Lynch,* 9 Tenn. App., 129, was not reviewed by this court on this point. *Whittaker* v. *Tennessee Cent. Ry. Co.,* 3 Tenn. App., 185, ruled that a final judgment is not suspended, beyond the adjournment of the term at which it is rendered, by a motion for a new trial of which no minute record is made, so as to empower the trial court to act on the motion at a succeeding term. That case is thus distinguished from the case before us, in which action on the motion was had at the trial term.

The judgment of the circuit court is affirmed.