HARRY E. HUDSON and MARY HUDSON
v. MILDRED HORNER and H. K. WEESE.
—434 S.W.(2d) 842.

Eastern Section. December 8, 1967.

Certiorari Denied by Supreme Court July 1, 1968.

570

Asquith, Ailor, & Jones, Knoxville, for appellants, Mildred Horner and H. K. Weese.

Egerton, McAfee, Armistead, & Davis, Knoxville, for appellees, Harry E. Hudson and Mary Hudson.

COOPER, J. This appeal is from the decree of the Chancery Court of Knox County awarding Harry E. Hudson and wife Mary Hudson, complainants below, a judgment against Mildred Horner and H. K. Weese, defendants below, in the amount of $15,361.01 as damages resulting from "the fraudulent misrepresentations of the defendants" in inducing the complainant to purchase the One Stop Craft and Gift Shop.

The complainants have moved to dismiss defendants' appeal, insisting (1) that the appeal was not perfected within the time required by law, and (2) that the errors assigned were decided by this court in an earlier appeal of this case. We find no merit in either insistence.

The record shows that the final decree in this cause was entered on November 4, 1966. On November 10, 1966, the defendants filed a petition to rehear, which had the effect of suspending the decree "in like manner as a judgment at law on motion for a new trial." Eldridge v. Rively, 175 Tenn. 74, 132 S.W.2d 204; Wright v. Dorman, 155 Tenn. 189, 194, 291 S.W. 1064, 1065. The order overruling the petition to rehear was entered on April 28, 1967. Mr. Weese filed his appeal bond on May 18, 1967, and his co-defendant, Mildred Horner, filed a

pauper's oath in lieu of an appeal bond on the same day—both being within the 30 days allowed for the perfection of an appeal. See T.C.A. 27-312.

As to the other ground of the motion, this court in the prior appeal decided only that complainants were entitled to examine and have filed the defendants' federal income tax returns for the years 1960 and 1961 (see opinion of Judge Humphreys filed August 26, 1964) and remanded the cause for the production of these documents. In doing so it was expressly stated that "in view of this disposition of the case we deem it unnecessary to consider any of the other assignments of error."

The record in this cause shows that the parties entered into a contract of sale on September 6, 1961, under which the Hudsons were to pay $7500.00 for the business "consisting of the lease of [the] premises, the stock in trade, fixtures, furniture and equipment and all other assets of the business, tangible or intangible," and were to take possession on September 16, 1961. The $7500.00 purchase price represented the value of the fixtures and the stock inventory as of September 6th, at wholesale. Adjustments were to be made in the selling price to cover the reduction in inventory between the date of the contract and the date the business premises were actually delivered to the Hudsons. Mrs. Horner, in addition to selling the business, agreed that she would not compete with the complainants' business for a period of five (5) years.

The Hudsons took possession of the business premises on September 16, 1961, paying a total of $7,119.94 for the business. The bill of sale was executed by Mrs. Horner and H. K. Weese d/b/a One Stop Craft and Gift Shop on September 29, 1961.

The Hudsons, by letter dated October 31, 1961, sought to rescind the purchase agreement on the ground, among others, that the defendants "had represented" the business grossed $31,000.00 annually when in fact it was substantially less than this amount." The letter, which was sent by certified mail, was unclaimed.

On November 17, 1961, the complainants filed the bill in this cause seeking a rescission of the contract of sale, and specifically asking the court to "return all the parties to the status quo by ordering the defendants to restore to the complainants the purchase price paid for the business with interest, and that the complainants be allowed to restore the defendants to possession and control of the business, with adjustments made for subsequent sales, expenses, services and increased inventory." While several charges were made as bases for the rescission, all were subsequently abandoned except the allegation that the defendants fraudulently misrepresented the gross receipts of the business for the years 1960 and 1961, for the purpose of inducing complainants to buy the business, and that complainants bought the business in reliance on defendants' representations. Specifically, complainants charged that defendants induced them to buy the business by representing that it had a gross annual income in 1960 of $31,000.00, and that the business was grossing an equal or greater amount in 1961, when, in fact, the annual gross income was substantially and materially less than the amount it had been represented to be.

On December 6, 1961, all of the parties met in defendants' attorney's office at which time the offer to rescind the contract was made by the complainants and was refused by the defendants. It was then agreed between the parties that the defendants would furnish complain-

ants with the records of the business to show that the business had in fact grossed $31,000.00 in 1960 and that the complainants would continue operating the business until the records were made available.

The records were not forthcoming from defendants and, on January 17, 1962, complainants amended their original bill seeking the help of the court in securing the records.

On January 18, 1962, the defendants filed an answer in which they admitted the sale of the business based upon the inventory, but denied any material misrepresentations had been made to the complainants and denied complainants were entitled to rescission of the contract. The defendant, H. K. Weese, denied also that he was either an owner or operator of the business.

On trying the cause by deposition, the Chancellor found that "the defendants did a gross business of approximately $31,000.00 for the year 1960 and were maintaining that approximate figure in the year 1961 up and until the date when the sale was completed," and that the defendants had made no representation as to the net profits. The Chancellor noted specifically that "a copy of the Federal Income Tax Return for 1960 was furnished to the complainants, although the Court refused to allow the complainants to require the defendants to produce certified copies of the returns for 1960 and 1961. Copy of the 1960 return is filed as Exhibit 3 to the testimony of H. K. Weese. Both Mr. and Mrs. Horner and Mr. Weese, however, testified that the tax on the basis of a gross business of $31,000.00 was paid." The copy of the 1960 tax return filed by the defendants bore date of April 10, 1961, which was before the parties began their negotiations for the sale of the business.

The Chancellor then entered a decree dismissing the original bill, and the complainants appealed.

On appeal, as noted above, this court remanded the cause for the production and filing in evidence of certified copies of the defendants' 1960 and 1961 income tax returns.

When these returns were secured from the office of the Director of Internal Revenue, it was found that the return filed by the defendants at the earlier hearing was not the 1960 return, as originally filed, but was a copy of an amended return filed on February 26, 1962, several months after this suit was instituted.

The Chancellor pointed out in a memorandum that "while there may be other facts entering into and supporting the Court's decision (referring to his earlier decision dismissing complainants' suit), the Court relied principally upon the copy of the 1960 tax return which, taken together with the testimony of the defendants, the Court felt justified the dismissal of the complainants' bill.

\* \* \* \* \* \*

"After considering the record in the light of the misrepresentation made by the defendants concerning the 1960 return, the Court is of the opinion that the testimony of the defendants with respect to the issues joined in this case cannot be relied upon and that the complainants' bill should be and is hereby sustained."

The Chancellor further found that "inasmuch as the (complainants had ceased doing business and stored the inventory in the basement of their home) and a rescission would not be practical, the issue as to damage suffered by the complainants should be and is hereby referred to the Master \* \* \*"

The Master found the damages suffered by complainants to be $25,611.58, $7,583.65 being the net operating loss, excluding interest, during time complainants operated the business, $3,849.30, representing inventory at depreciated cost, $464.00 fixtures as depreciated, $3,273.63 interest, and $10,440.00 as wages due the complainants.

The Master also reported that the complainants had made a total investment of capital in the business of $12,195.78, that interest on the investment was $3,165.23, these added to unpaid salaries allotted the Hudsons, totaled $25,801.01.

Exceptions to the Master's report were filed by the defendants, and a hearing was held by the Chancellor on September 30, 1966. The Chancellor made known his conclusions at this hearing, but they are not set forth in the record except as contained in the order entered by the Chancellor on November 4, 1966.

In this order, which is also a Final Decree, the Chancellor disallowed the claim of wages for the Hudsons, affirmed the Master's report allowing recovery of the total investment of the Hudsons in the business, with interest, and entered judgment in the amount of $15,361.-01. The Chancellor also ordered the inventory of the Gift Shop to be sold under the direction of the Clerk and Master and that the net proceeds from the sale be applied in partial satisfaction of the judgment. No specific reference was made in the decree to a petition to rehear then pending before the Chancellor in which the defendants took issue with the Chancellor's conclusion that complainants were entitled to damages in this cause, and with his reference of this cause to the Master for a determination of damages, if any, suffered by complain-

ants as the result of the fraudulent misrepresentations of defendants.

Defendants insist that ''the Chancellor erred in confirming the Master's report to the extent that complainants were found entitled to judgment against the defendants in the sum of $15,361.01 in damages and leaving undetermined the questions raised by the petition to rehear upon which the court had reserved judgment * * *,,

We think it implicit in the Chancellor's action on the Master's report that the Chancellor found no merit to defendants' petition to rehear, though he did not specifically so state. In any event, the cause is tried in this court de novo and we can pass upon the question of whether or not complainants, under the pleadings and proof, are entitled to recover damages from the defendants.

It is noted also that the defendants have assigned as error the entry of the final decree in this cause by the Chancellor, the defendants insisting that the rules of the Chancery Court of Knox County require that a 5 day notice be given all counsel that a decree will be presented to the Chancellor for signature. The rules of the Chancery Court are not a part of the record in this cause, but, conceding that they are as insisted by defendants, we see no prejudicial error in the Chancellor's waiving the rules and entering a decree in the absence of a showing that the decree, as entered, was not in accord with the earlier announced holding of the Chancellor, or a showing that the defendants were prejudiced by the court's waiver of its own rules.

The defendants have also assigned as error the Chancellor's finding that "defendants had misrepresented the gross volume of business done by the One Stop Craft and Gift Shop in 1960 and that complainants' bill should be sustained." We have read the record, giving especial emphasis to those areas of proof referred to in defendants' brief and in earlier memorandum opinion of the Chancellor, and have come to the conclusion that the evidence in this cause requires a finding that the defendants fraudulently misrepresented the volume of business being done by the gift shop to induce the complainants to buy the business, and that the complainants bought the business in reliance on the defendants' representations. We, therefore, concur in the Chancellor's findings on this issue.

Defendants also insist that "the Chancellor erred in finding that the complainants were entitled to any relief as to the defendant H. K. Weese"—it being the insistence of defendants that there was no evidence to show that Mr. Weese was involved in the negotiations with the complainants, or that he was an owner and/or operator of the business. In making this argument, counsel overlooked the fact that Mr. Weese executed a bill of sale to the business representing himself as a partner, and that Mr. Weese also completed and executed a report form for Dun and Bradstreet in which he represented himself as a partner. These representations, coupled with Mr. Weese's active participation in the effort of the defendants to mislead the court as to the gross business of the gift shop in 1960 by filing the misleading tax return, outweigh the testimony of defendants that Mr. Weese had no interest in the business.

Defendants insist further that the Chancellor erred in referring the matter to the Master to determine the damages to which the complainants were entitled as a result of the fraudulent misrepresentations of defendants —that it was the duty of the Chancellor to determine the case upon the pleadings, which show complainants sought rescission only and not damages. We find no merit in this insistence. The relief sought by the complainants was rescission ''with adjustments (to be) made for subsequent sales, expenses, services and increased inventory,'' and ''such other, further and general relief as they may be entitled to and as the nature of the case may require.''

Complainants sought to restore the property to the defendants within 45 days of the date possession was given them. The bill in this cause stood as a continuing offer and defendants' contest of the suit amounted to a continuing refusal to accept the offer. Bevins v. Livesay, 32 Tenn.App. 1, 221 S.W.2d 106. This proved to be an onerous burden in view of the extended time the cause was in litigation. Much of the delay in bringing this suit to a conclusion must be attributed to defendants' efforts to keep complainants from having access to the true records of the business, and to defendants' later action in preparing and filing the 1960 income tax return in an effort calculated to, and which did, mislead the Chancellor and which resulted in an additional delay. As the result of the extended delay, and the losses being suffered by complainants in the operation of the business, the business was closed and the inventory stored. The value of the inventory and fixtures at wholesale cost was $6,336.03. According to the complainants, approximately 50% of the inventory and fixtures stored is the same goods

delivered to defendants and 90% of the inventory is of the same kind and quality as was delivered to complainants.

"Frequently a fraudulent seller will refuse to receive the goods when offered in rescission of the bargain, and as to the rights of the buyer then, it has been said: 'A purchaser who is defrauded by the seller, and who in the lawful exercise of his right to rescind tenders the property to the seller, who refuses to receive it, is under no other obligation to him than to retain the property as his bailee and agent, and, after notice of his intention, may in good faith dispose of the same for account of the owner. If he sells the property otherwise than in good faith, the extent of his liability would be the fair market value of the same.' Doubtless such a right of resale is allowable, but in view of the chance for subsequent dispute as to the propriety of the buyer's conduct, if it does not involve expense or any great degree of care, it would seem safer for a defrauded buyer who wishes to rescind the transaction to retain the goods on behalf of the fraudulent seller if the latter refuses to assent to rescission." Williston on Sales, Revised Edition, Sec. 649, p. 501—502.

In Bevins v. Livesay, 32 Tenn.App. 1, 221 S.W.2d 106, in holding that complainants did not lose the right to rescind by continuing to operate the business after discovery of the fraud, the court pointed out that "the bill stands as a continuing offer (to rescind) and defendants' contest of the suit amounts to a continuing refusal to accept the offer. A substantial part of the purchase price represented the value of good will which would have been lost if complainants had not continued operating the business. We do not see that they have made any changes that are not incident to normal operations of the kind.

Defendants will be the beneficiaries of complainants' losses incurred in keeping the business going during the time defendants have contested, as we find without justification, the right to rescind.

"The requirement of equity that a purchaser seeking rescission on the ground of fraudulent misrepresentation must put the seller in status quo is an application of the principle that one seeking equity must first do equity. It should not be turned into a technicality to afford the seller a means of escape from the consequences of his fraud. An offer to do equity by restoring the property, declined by the seller, in the absence of proof giving rise to the inference that the purchaser retains the property as his own, leaves the purchaser with the right of rescission unimpaired."

We think the complainants, under the pleadings and evidence in this cause, and the above authorities, are entitled to a rescission of the contract under which they purchased the One Stop Craft and Gift Shop and to recover their investment in the business, both in cash and in labor, made prior to the discovery of the fraud and the definite refusal of the defendants to accept the return of the business. Defendants would be entitled to have the merchandise and fixtures stored by the complainants sold and the proceeds credited against the recovery of the complainants, as ordered by the Chancellor. The "cut-off" date for the investment of complainants in our opinion was January 17, 1962, when the complainants amended their original bill and sought the aid of the court in securing the business records promised by the defendants. Up until that time, the complainants were operating the business under an agreement with the defendants. Investments made by the complainants in

the following months were made with knowledge of the business and its potential for profit and for loss, and were made at the risk of complainant.

The record shows that the complainants invested a total of $8,134.94, in cash, in the business prior to January 17, 1962.

| | |
|---|---|
| Purchase of the business, including the inventory and fixtures 9/16/61 | $7,119.94 |
| Necessary operating capital prior to 1/17/62 | $1,015.00 |
| Total | $8,134.94 |

In interest on the cash invested in the business from the date of the investment to November 4, 1966, the date the final decree was entered in the Chancery Court would be $2,481.71

| | |
|---|---|
| $7,119.94 $\times$ 6% $\times$ 5.125 years = | $2,188.38 |
| $1,015.00 $\times$ 6% $\times$ 4.833 years = | $ 293.33 |
| Total | $2,481.71 |

The record shows that Mr. Hudson worked an average of 31 hours per week in the business, and Mrs. Hudson worked an average of 37 hours. At the minimum hourly wage, which is all that was claimed by the Hudsons, the value of the labor performed by the Hudsons would be $1,445.00.

| | |
|---|---|
| Mr. Hudson: 31 hrs./wk. $\times$ 17 wks. at $1.25/hr. = | $ 658.75 |
| Mrs. Hudson: 37 hrs./wk. $\times$ 17 wks. at $1.25/hr. = | $ 786.25 |
| Total | $1,445.00 |

\* \* \* \* \* \*

██ The decree of the Chancellor in this cause will be modified to show the total recovery to which complainants are entitled, including cash invested with interest to November 4, 1966, and the value of the labor performed by the Hudsons, to be $12,061.65. As modified, the decree will be affirmed.

Costs incident to the appeal are adjudged against the defendants Mildred Horner and H. K. Weese, and sureties.

McAmis, P. J., and Parrott, J., concur.

Petition to Rehear

COOPER, J. ██ Complainants, Harry E. Hudson and wife Mary Hudson, have filed a petition to rehear asking this court to modify its award of damages to include a sum "representing the expenses incurred in storing the property and in protecting it by insurance from January 17, 1962 (the date the court determined was the 'cut-off' date for the liability of defendants for the investment of complainants in the gift shop) and in protecting it by insurance from January 17, 1962 to the date of the filing of the court's opinion (December 8, 1967)." Complainants insist that these expenses total $2,852.00, the insurance premium being $130.00 per year and the rent for storage being $360.00 per year.

The record shows that complainants did not store the merchandise and fixtures on January 17, 1962, but used them in the operation of the gift shop until March 1, 1964. At that time, complainants closed the gift shop and stored the remaining merchandise and fixtures in the basement of their home.

We have found no evidence in the record tending to show that complainants incurred any out-of-pocket storage costs. Complainants did pay insurance premiums on the property but they, in the main, were paid during the time complainants were using the fixtures and merchandise in the operation of the gift shop and were business expenses due to be paid by complainants. Insurance premiums paid during the time the merchandise and fixtures were stored in the basement of complainants' home, if any were in fact paid during this time, in our opinion should also be the burden of the complainants, they having had the use of the fixtures and merchandise for many months with the ultimate depreciation being borne by the defendants.

The petition to rehear is overruled. Costs incident to the petition to rehear are adjudged against complainants and their sureties.

McAmis, P. J., and Parrott, J., concur.