JOE SCHENK, Adm'r of the Estate of HENRY HOL-
LINGSWORTH, Deceased, Plaintiff in Error, v. PAUL
GWALTNEY, Defendant in Error.

JOE SCHENK, Adm'r of the Estate of HENRY HOL-
LINGSWORTH, Deceased, Plaintiff in Error, v. LE-
BORN HOLLINGSWORTH, Adm'r of the Estate of J.
C. HOLLINGSWORTH, Deceased, Defendant in Error.

JOE SCHENK, Adm'r of the Estate of HENRY HOL-
LINGSWORTH, Deceased, Plaintiff in Error, v.
EVELYN W. KING, Adm'x of the Estate of J. C. KING,
JR., Deceased, Defendant in Error.—309 S. W. (2d) 424.

Western Section. July 25, 1957.

Petition for Certiorari denied by Supreme Court October 4, 1957.

460

James S. Wilkes, Dyersburg, and John L. West, Ridgely, for plaintiff in error Joe Schenk, Adm'r of the estate of Henry Hollingsworth, deceased.

Miles & Miles, Union City, and Fred Roberson, Tiptonville, and E. T. Palmer, Dyersburg, for defendants in error Paul Gwaltney and Leborn Hollingsworth, Adm'r of the Estate of J. C. Hollingsworth.

R. D. Fry and Heathcock, Elam & Cloys, Union City, for defendant in error Evelyn W. King, Adm'x of the estate of J. C. King, Jr.

CARNEY, J. These three lawsuits were tried jointly to a jury in Lake County, Tennessee. The jury found in favor of the plantiff in each of the three cases. Judgments were entered against the defendant, Joe Schenk, adm'r of Henry Hollingsworth, in favor of the plaintiffs as follows: Paul Gwaltney, a minor aged 19, $12,500; Leborn Hollingsworth, adm'r of the estate of J. C. Hollingsworth, $15,000; Evelyn W. King, adm'x of the estate of J. C. King, Jr., $15,000.

The defendant below, Joe Schenk, adm'r of the estate of Henry Hollingsworth, has appealed in error from each of said three judgments.

Before the cases were argued upon the merits in this court the defendants in error filed a motion in this court to strike the bill of exceptions and dismiss the appeals on the grounds that the bill of exceptions was not filed within the time allowed by law and as fixed by the trial court.

Upon a review of the record as filed in this court it appeared that the orders overruling the motions for new trials, though approved by all of the attorneys of record and though filed with the clerk of the court, had never been signed by the Trial Judge nor had they been entered upon the minutes of the court.

It was the opinion of this court that we did not have jurisdiction to consider the appeals since the record did not show that the order of the Trial Judge overruling said motions and granting the appeals in error had been entered upon the minutes of the court. Dalton v. Dean, 22 Tenn. App. 56, 117 S. W. (2d) 973; Higgins-Crownover Tennessee Procedure, Sections 1826, 1827, 1885; Payne v. Eureka-Security Fire & Marine Insurance Co., 173 Tenn. 659, 122 S. W. (2d) 431; Cochran v. National Life & Accident Insurance Co., 167 Tenn. 95, 66 S. W. (2d) 996; Life & Casualty Ins. Co. v. Baber, 166 Tenn. 10, 57 S. W. (2d) 791; Standard Oil Co. v. Narramore, 30 Tenn. App. 430, 207 S. W. (2d) 7.

A per curiam opinion of this court was filed on January 30, 1957, authorizing a judgment to be entered remanding the cases to the court below together with a copy of said per curiam opinion in order that the record might be properly prepared to give this court jurisdiction of the appeals. This was under the authority of T. C. A. sec. 27-329.

Upon a remand of said cases the orders overruling the motions for new trial were each signed by His Honor, the Trial Judge, and entered upon the minutes of the court. The transcript of the record has been corrected accordingly and returned to this court. We now have jurisdiction to consider the appeals.

464

■ Inasmuch as the bill of exceptions properly authenticated by the Trial Judge was on file with the clerk of the court at the time the orders overruling the motions for new trial were signed by the Trial Judge and entered upon the minutes of the court pursuant to the judgment of this court of date January 30, 1957, the bill of exceptions is not subject to the objection that it was filed too late. In the oral argument of these causes upon the merits attorneys for the defendants in error withdrew their motion to strike the bill of exceptions and we now have the causes for determination upon the assignments of error filed by the plaintiff in error, Joe Schenk, administrator.

The suits arose out of an automobile accident which happened on September 29, 1955, south of Indianapolis, near the town of Gosport, Indiana.

Henry Hollingsworth, aged 56, his son, J. C. Hollingsworth, aged 35 and J. C. King, Jr., aged 43, were residents of Lake County, Tennessee. Paul Gwaltney, aged 19, is a resident of Obion, Obion County, Tennessee.

All four of these men had been working in Ypsilanti, Michigan, and at the time of the tragedy, they were on the way home to Tennessee for a vacation. They were traveling in a 1954 Pontiac automobile owned by Mr. Henry Hollingsworth.

They had left Michigan about 2:00 A.M. on the morning of September 29, 1955. The parties had agreed to share the expenses of gas, oil and meals on the trip. J. C. Hollingsworth, the son, had driven the automobile on the first lap of the trip.

Sometime about daylight, they had a puncture and when they resumed travelling, the owner, Mr. Henry Hollingsworth, took the wheel. It was planned that later on Mr. J. C. King would also drive a part of the way. Since Paul Gwaltney was only 18 years of age at the time, it was not contemplated that he would drive any of the way.

The accident happened on Highway 67 south of Indianapolis about 9:45 A.M. Paul Gwaltney was riding and dozing on the back seat of the automobile. The three others were on the front seat. No one saw the accident. No one knows for a certainty who was driving the automobile at the time of the accident. The evidence showed that the automobile left the west or southbound lane of traffic and ran into the north end of a concrete bridge on the east or left side of the road; then the automobile came to rest crossways of the road in front of the entrance to said bridge.

The plaintiff, Paul Gwaltney, the only survivor, who was asleep on the back seat of the car at the time, was thrown out of the car and into a ditch beside the bridge.

Two of the others were killed instantly. Mr. King died in a Martinsville, Indiana, hospital without ever regaining consciousness.

All of the parties were thrown clear of the automobile by the impact. The front end of the car was smashed in and the concrete banister on the side of the bridge was broken into a panel of about three feet by the force of the impact from the automobile.

The highway was slick from the rain which had been falling and which was falling at the time of the accident.

Some three hundred feet north of the bridge was a highway sign which read "Slippery when Wet." This sign was erected to warn traffic coming from the north on Highway 67 as they approached the concrete bridge of the dangerous condition of the highway when it was wet as on the day in question. The sign was on the highway and was passed by the occupants of the Pontiac automobile on the day of the fatal wreck.

Trooper N. K. Malone of the Indiana State Police testified that on the day of the wreck he was travelling south on Highway No. 67 and that he noticed the Pontiac trailing him on said highway for a distance of about three miles. He thought the four occupants were divided— two on the front seat and two on the back. He noticed through his rear view mirror the Pontiac trailing him and estimated he was then travelling about fifty-five to sixty miles per hour. The driver of the Pontiac did not seek to go around him but he did notice that it seemed to be following his car a little too closely.

Paul Gwaltney, who was on the back seat of the Pontiac, corroborates this testimony of Trooper Malone to the extent that Gwaltney roused sufficiently to notice a State Police car in front of the Hollingsworth car prior to the accident. At that time Mr. Henry Hollingsworth was driving his own automobile. Gwaltney went back to sleep and knows nothing further about the wreck until after the car had hit the bridge and the occupants thrown out of the car. The rain falling in Gwaltney's face brought him to consciousness and he remembers being put in an ambulance.

Trooper Malone further testified that he turned off Highway 67 at a point twelve to fifteen miles north of

the scene of the accident; that he drove about one mile and stopped at a filling station, drank a soft drink, drove on further in his patrol car when his radio told him about a wreck near Gosport on Highway 67. He estimates the time he turned off Highway 67 in front of the Pontiac until he learned by radio of the wreck of an automobile on the bridge near Gosport. Trooper Malone estimated the distance of twelve miles from a road map and estimated the time of ten minutes from memory.

Trooper Malone then drove to the scene of the wreck near the bridge and found the Pontiac automobile which had feen trailing him just a short while before. One ambulance had already been to the scene and left with one or more of the occupants. Two of the occupants were lying on the pavement near the wrecked Pontiac. He identified these men as Mr. Henry Hollingsworth and his son, J. C. Hollingsworth. They were both dead. The legal speed limit on the highway at the point of the collision was sixty-five miles per hour.

The only witnesses for plaintiffs who gave any evidence relating to circumstances surrounding the accident were Trooper Malone and plaintiff, Paul Gwaltney. The evidence of other witnesses for the plaintiffs related to nature of injuries, earning capacity, next of kin, dependents, etc. and shed no light on the nature or cause of the accident.

The defendant administrator of Henry Hollingsworth introduced in evidence only a deposition given by Charles F. Douglas, Sheriff of Owen County, Indiana. Sheriff Douglas was on his way to Indianapolis and came upon the wreck at the bridge on the way. He stopped and investigated. He found three men lying on the roadway

beside the automobile and the one occupant, Paul Gwaltney was over in the ditch. The only difference between the testimony of Sheriff Douglas and Trooper Malone as to the physical facts surrounding the scene of the accident, is that Sheriff Douglas testified that no part of the the concrete banister of the bridge was knocked away from the remainder of the banister. Relatives of the deceased persons testified that on the next day they went by the scene of the accident and saw the portion of the concrete banister knocked completely loose from the remainder of the banister.

The defendant relied upon and pleaded the Indiana Guest Statute which is as follows:

1952 Replacement, Burns' Indiana Statute Annotated 47-1021—Guest of Owner or Operator—Right to Damages. ''The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle, resulting from the operation thereof, unless such injuries or death are caused by the wanton or *wilful* misconduct of such operator, owner, or person responsible for the operation of such motor vehicle.''

Since the accident occurred in the State of Indiana the plaintiffs' claims for damages arising out of said collision are controlled and determined by the laws of the State of Indiana. Sloan v. Nevil, 33 Tenn. App. 100, 229 S. W. (2d) 350; Parsons v. American Trust & Banking Co., 168 Tenn. 49, 73 S. W. (2d) 698.

His Honor, the Trial Judge, properly held that all three passengers in the car, namely Paul Gwaltney, J. C.

Hollingsworth and J. C. King, Jr. were guests in the car of Henry Hollingsworth and that therefore, the above guest statute was applicable. He charged the jury that none of the plaintiffs could recover of the defendant, Joe Schenk, "unless you find from all of the evidence in the case that the injuries sustained by the deceased, J. C. Hollingsworth and J. C. King, Jr., resulting in their deaths and the injuries sustained by the plaintiff, Paul Gwaltney, if any, were directly and proximately caused by the willful or wanton misconduct of the defendant, Henry Hollingsworth, deceased, in the operation of the automobile which caused the accident and plaintiff's injuries and the death of J. C. Hollingsworth and J. C. King, Jr.

■ By assignment of error No. I the defendant administrator, Joe Schenk, insists the Trial Judge committed reversible error in permitting attorney for plaintiffs, over objection of defendant, to ask the jury on voir dire examination the following question:

"Do any of you gentlemen own any stock in the Hawkeye Security Insurance Company?"

■ The Trial Judge is vested with wide discretion with regard to permitting or not permitting such interrogation of jurors on their voir dire examination. The record does not show that the question was asked in bad faith. Accordingly the assignment of error must be respectfully overruled. Lunn v. Ealy, 176 Tenn. 374, 141 S. W. (2d) 893.

■ Assignment of error No. III avers that the evidence preponderates against the verdict. Our appellate courts have many times stated that they cannot weigh the pre-

ponderance of the evidence. Consequently the assignment of error is overruled.

■ By assignment of error No. IV plaintiff in error insists that the Trial Judge should have granted a new trial because the jury was out for deliberations only eight minutes. We do not see how such fact, standing alone, would be ground for a trial. Further, since we are not cited to any portion of the transcript which sustains such ground as a fact, we must overrule the assignment.

■ Assignment of error No. V complains that the Trial Judge erroneously charged the jury that all three plaintiffs charged in their declarations that Henry Hollingsworth was driving the automobile at the time of the accident, whereas only the administrator of J. C. King had so charged and the other two plaintiffs had charged that Henry Hollingsworth or J. C. King was driving the automobile.

The defendant did not call the attention of the Trial Judge to this oversight nor was any special request on this particular matter submitted by defendant. We see no prejudice to the defendant and the assignment of error is overruled. T. C. A. sec. 27-117.

■ Assignment of error No. VI complains that the Trial Judge charged the jury that proof of registration of the automobile in the name of Henry Hollingsworth, in absence of any proof to the contrary, raised a presumption that the car was being operated at the time of the accident by the owner, Henry Hollingsworth, or by his agent for the owner's use and benefit, and within the scope of his employment, which presumption was to be

considered by the jury, together with all other evidence in the case, in determining whether Henry Hollingsworth was the owner and driver of the automobile at the time of the accident or not; and whether, as such, he was guilty of willful or wanton misconduct which was the direct and proximate cause of the accident, injuries and deaths of J. C. King, Jr. and J. C. Hollingsworth and injuries to Paul Gwaltney.

Defendant contends that such instruction is not the law in the State of Indiana and that the rights of the parties are controlled by the law of Indiana. The above statement is a correct statement of the law in Tennessee. Defendant, in his brief, does not cite authority to sustain his contention that the above is not the law in Indiana.

Accordingly, in the absence of any citation of authorities showing Indiana law on this question to be different, we must presume that the law in Indiana is the same as the law in Tennessee on this question and the assignment is respectfully overruled. See Gordon's Transports, Inc. v. Bailey, 41 Tenn. App. 365, 294 S. W. (2d) 313, 326.

■ Assignment of error No. VIII avers that it was error for the Trial Judge to fail to charge the jury the provisions of Sections 2-403 and 2-404 of Burns' Annotated Statutes of the State of Indiana and which sections are as follows:

"2-403. All actions survive—Exception—Continuance of actions—Damages.—All causes of action shall survive, and may be brought, notwithstanding the death of the person entitled or liable to such action, by or against the representative of the deceased party, except actions for personal injuries of

the deceased party and for promises to marry. Any action contemplated in this section or in section 6 (sec. 2-402) of this act may be brought, or the court, on motion, may allow the action to be continued, by or against the legal representatives or successors in interest of the deceased. Every such action shall be deemed to be a continued action, and therefore accrued to such representatives or successors at the time it would have accrued to the deceased if he had survived. If any such action is continued against the legal representatives or successors of the defendant, a notice shall be served on him as in the case of an original notice. If any action has been commenced against the decedent prior to his death, the same shall continue by substituting of his personal representatives as in other actions surviving the defendant's death; in event the action be brought subsequent to the death of the party against whom the cause existed, then the same shall be prosecuted as other claims against said decedent's estate. In an action for personal injuries or wrongful death surviving because of this section, the damages, if any recovered, shall not exceed the reasonable medical, hospital or funeral expenses incurred, and a sum not to exceed five thousand dollars ($5,000) for any and all other loss, if sustained."

"2-404. Action for Wrongful Death.—When the death of one is caused by the wrongful act or omission of another, the action shall be commenced by the personal representative of the decedent within two years, and the damages shall be in such an amount as may be determined by the court or jury, but shall not exceed fifteen thousand dollars, and subject to

the provisions of this act, shall inure to the exclusive benefit of the widow or widower, as the case may be, and to the dependent children, if any, or dependent next of kin, to be distributed in the same manner as the personal property of the deceased. If such decedent depart this life leaving no such widow or widower, or dependent children or dependent next of kin, surviving her or him, the damages shall inure to the exclusive benefit of the person or persons furnishing hospitalization or hospital services in connection with the last illness or injury of the decedent, not exceeding one thousand dollars [$1,000]; performing medical or surgical services in connection with the last illness or injury of the decedent, not exceeding one thousand dollars [$1,000]; to the undertaker for the funeral and burial expenses, not exceeding one thousand dollars [$1,000]; and to the personal representative, as such, for the costs and expenses of administering the estate and prosecuting or compromising the action, including a reasonable attorney's fee, not exceeding one thousand dollars [$1,000]; and in case of a death under such circumstances, and when such decedent leaves no widow, widower, or dependent children, or dependent next of kin, surviving him or her, the measure of damages to be recovered shall be the total of the reasonable value of such hospitalization or hospital service, medical and surgical services, such funeral expenses, and such costs and expenses of administration, including attorney fees, not exceeding the total amount of four thousand dollars [$4,000]."

Thus it appears that under these sections in the State of Indiana there is a somewhat unusual limitation upon

the right of recovery against a deceased tort-feasor for personal injuries. It appears that under Indiana law there is no limitation upon the right of recovery for personal injuries if both the plaintiff and the defendant survive the accident. If the plaintiff dies as a result of his injuries the amount of his recovery is limited to $15,000. Further, in the event he is not survived by dependent next of kin, his recovery is limited to actual medical bills, funeral expenses, administration expenses and attorney's fees not exceeding a total recovery of $4,000.

It also would appear under the Indiana law that if the tort-feasor shall die before the commencement of the litigation, claimant's recovery is reduced to $5,000 plus medical, hospital and funeral expenses.

Thus under the restrictions set out above the plaintiff, Mrs. Evelyn King, Adm'x of the estate of J. C. King, would be limited to a recovery of $5,000 plus medical, hospital and funeral expenses; the plaintiff, Paul Gwaltney, would be limited to a recovery of $5,000 plus hospital, medical and funeral expenses and the plaintiff, Leborn Hollingsworth, Adm'r of the estate of J. C. Hollingsworth, would be limited to a total recovery of $4,000 to cover hospital, medical, funeral expenses, attorney's fees and administration expenses.

Defendants below cited and relied upon these statutes in their pleadings. The Trial Judge failed to charge the provisions of said statutes and the defendants made no special request that they be charged. The defendants did not assign as error in their motion for a new trial the action of the Trial Judge in failing to charge said sections.

Rule 11(5) of the "Rules of the Court of Appeals" provides as follows:

"(5) Error in the admission or exclusion of testimony, in charging a jury, or refusing further instructions, misconduct of jurors, parties or counsel, or other action occurring or committed on the trial of the case, or other ground upon which a new trial is sought, will not constitute a ground for reversal and a new trial, unless it affirmatively appear that the same was specifically stated in the motion made for a new trial in the lower court, and decided adversely to the plaintiff in error, but will be treated as waived; nor will any supposed matter in arrest of judgment be considered unless it appears that the same was specifically stated in a motion, seasonably made in the trial court, for that purpose, and held insufficient."

Therefore, in our opinion it is too late on this appeal for the plaintiff in error to raise such question. City of Memphis v. Uselton, 1953, 37 Tenn. App. 9, 260 S. W. (2d) 293; Savage v. Spur Distributing Co., Inc., 1949, 33 Tenn. App. 27, 35, 228 S. W. (2d) 122.

Assignment of error No. II insists that there is no material evidence to support the verdict of the jury and that the Court erred in failing to grant defendant's motion for a directed verdict at the conclusion of all the proof.

If this case were being tried under Tennessee law we would have no hesitancy in holding that there was material evidence to support the verdict of the jury under the application of the doctrine of res ipsa loquitur. This Court has had occasion recently to consider two cases

very similar to these cases; that is, a car is found wrecked with all the occupants dead or unconscious and only the circumstances to indicate that the car left the regular lane of traffic and crashed into a tree or bridge. Burkett v. Johnston, 1955, 39 Tenn. App. 276, 282 S. W. (2d) 647; Ross v. Griggs, 1955, 41 Tenn. App. 491, 296 S. W. (2d) 641.

However, the State of Tennessee does not have the so-called Automobile Guest Statute which is in force in the State of Indiana as quoted above. While the appellate courts of Indiana do not seem to have passed upon the question of the application of the doctrine of res ipsa loquitur as it applies to the Indiana Automobile Guest Statute, yet the appellate courts of Indiana have directed many cases which involved a construction and application of its guest statute.

One of the leading cases giving construction to the Indiana Guest Statute is the case of Bedwell v. DeBolt, 1943, 221 Ind. 600, 50 N. E. (2d) 875, 877. The defendant driver had driven his automobile into a train with the flasher signal working and clearly visible to him. The guest in the automobile had brought suit and the Supreme Court of Indiana in construing the Automobile Guest Statute said as follows:

"* * * The question then arises as to the meaning of the words 'wanton and wilful misconduct', as used in the above act. On this phase of the case we find ourselves in complete agreement with what was said by Blessing, C. J. when this case was before the Appellate Court of Indiana (47 N. E. (2d) 176, 181.) We, therefore, adopt as our own the following language employed by him:

" 'Blashfield has defined "wanton misconduct" as "the intentional or wanton disregard of the safety of others, and is manifested by conduct which is of such a character as to indicate the autoist's indifference to the consequences of his acts." The same author defines "wilful misconduct" as "the intentional doing of something which should not be done, or intentional failure to do something which should be done, in the operation of the automobile, under circumstances tending to disclose the operator's knowledge, express or implied, that an injury to the guest will be a probable result of such conduct." Blashfield, Cyclopedia of Automobile Law & Practice, Permanent Edition, Vol. 4, sec. 2322, pp. 109 and 110.

" 'Berry, in his work, defines "wanton conduct" as follows: " 'Wantonness' * * * is the conscious doing of some act or the omission of some duty with knowledge of existing conditions, and conscious that, from the act or omission, injury, will likely result to another." Berry, Automobiles, Seventh Ed., Section 2.340. There would seem to be little, if any, difference in the definition of "wantonness" by Berry and the definition of "wilfulness" by Blashfield. While the word "wilful" may be used in a broader sense than the term "wanton", we are of the opinion that the meaning of the two words, as used in the Guest Statute, is clearly synonymous.

" 'In determining what constitutes a "wilful" or "wanton act", we subscribe to the view that it is not necessary to prove that defendant deliberately intended to injure the plaintiff; it being sufficient if it

is shown that, indifferent to consequences, the defendant intentionally acted in such a way that the natural and probable consequences of his act was injury to the plaintiff. Baines v. Collins, 1942, 310 Mass. 523, 38 N. E. (2d) 626, 138 A. L. R. 1123. See, also, Restatement of the Law on Torts, sec. 500, page 1293. And further, acts such as exhibit a conscious indifference to consequences, make a case of constructive or legal wilfulness. Kahan v. Wecksler, 1938, 104 Ind. App. 673, 12 N. E. (2d) 998; Jeneary v. Chicago & I. Traction Co., 1923, 306 Ill. 392, 138 N. E. 203-206; Reell v. Central Illinois Electric & Gas Co., 1942, 317 Ill. App. 106, 45 N. E. (2d) 500. To hold one guilty of "wilful" or "wanton" conduct, it must be shown that he was conscious of his conduct and with knowledge of existing conditions that injury would probably result, and with reckless indifference to consequences, he consciously and intentionally did some wrongful act or omitted some duty which produced the injuries. Murphy v. Snyder, 1939, 63 Ohio App. 423, 27 N. E. (2d) 152; Bartolucci v. Falletti, 1942, 314 Ill. App. 551, 41 N. E. (2d) 777. Ill will is not a necessary element. Bernier v. Illinois Cent. R. Co., 1921, 296 Ill. 464, 129 N. E. 747, affirming 215 Ill. App. 454.

" 'Knowledge of existing conditions on the part of the host is a consciousness of such conditions obtained through the exercise of his senses, or information obtained by warning through others.' "

In the case of Hoesel v. Cain, 1944, 222 Ind. 330, 53 N. E. (2d) 165, 168, 769, the plaintiff, Cain, and plaintiff's intestate, Bonnell, were riding in an automobile driven

by defendant Hoesel. They were traveling southward on a four-lane highway. The defendant, Hoesel, attempted to pass another automobile going southward and speeded up and pulled over into the left lane of traffic when he met the lights of a car approaching from the south. Thereupon, the defendant, Hoesel, attempted to get back in the right lane and applied his brakes causing the car to skid first into the car in the right lane driven by the defendant Kahler and then the Hoesel car skidded to the left and was struck by the automobile approaching from the south. Plaintiff's intestate, Bonnell, was killed and plaintiff, Cain, was severely injured and both recovered judgments both against the defendant, Hoesel, and against the defendant, Kahler.

The Supreme Court in reversing the judgments of plaintiffs against their host, Hoesel, referred to the case of Bedwell v. DeBolt, supra, with approval and held that there was no evidence from which the jury could find that the defendant, Hoesel, was guilty of willful or wanton misconduct. From said opinion we quote as follows:

"When Hoesel turned into the wrong side of the road and saw the car approaching from the opposite direction in such close proximity that he could not pass, if he then had persisted in his course we could ascribe to him such conscious indifference to consequences as to constitute wanton misconduct. Sanford v. Grady, 1934, 1 Cal. App. (2d) 365, 36 P. (2d) 652, 37 P. (2d) 475, was that kind of a case. But he did not persist in this course. Instead he tried to avoid the peril caused by his prior negligence. Knowing that the Kahler car had been following at a distance of 100 feet but unaware of its change of position

Hoesel's attempt to regain his former place in the line of traffic may also have been negligent but affords no fair inference that he was then so indifferent to consequences that he can be charged either with intent or willingness to inflict injury. We are not aided by the cases of Cole v. Morse, 1931, 85 N. H. 214, 155 A. 694, and Powers v. Comerford, 1933, 283 Mass. 589, 186 N. E. 585, both of which apply the law of Massachusetts which postulates more than one degree of negligence. The doctrine of comparative negligence does not prevail in Indiana. Between ordinary negligence and wilfulness there is no middle ground. A wanton injury is in the same class with a wilful injury. The first Guest Act, ch. 201, Acts 1929, exempted the driver from liability to his guest 'unless such accident shall have been intentional upon the part of such * * * operator or caused by his reckless disregard of the rights of others.' Even this language was construed as relieving from liability except 'under circumstances when his action, or his failure to act, evinces an entire abandonment of any care, and a heedless indifference to results which may follow, and he recklessly takes the chance of an accident happening without intent that any occur.' Coconower v. Stoddard, 1932, 96 Ind. App. 287, 296, 182 N. E. 466, 470. To justify recovery against Hoesel there must have been more than a failure to apprehend the danger of driving into the wrong lane of traffic. That was mere negligence. To have been guilty either of wilful or wanton misconduct he must have intentionally proceeded with knowledge of the peril or his conduct must have shown a conscious indifference upon his part as to

whether or not his act would cause injury. His motion for a new trial was erroneously overruled."

In the case of Becker v. Strater, 1947, en banc, 117 Ind. App. 504, 72 N. E. (2d) 580, 581, the appellate court upheld the action of the Trial Judge in directing a verdict for the defendant driver of an automobile in an action by his plaintiff guest. The defendant drove his automobile to an intersection and while looking off at some cattle in a nearby field ran into the intersection and was struck by an approaching car.

The opinion of Judge Flanigan in upholding a directed verdict said as follows:

"When he reached the intersection he failed to look to his right and he failed to stop. A jury could properly find either of these acts to constitute negligence. But could they properly find either or both acts to constitute willful or wanton misconduct? We think not. Mere negligence is not sufficient. The violation of a statute does not necessarily constitute willful or wanton misconduct."

In the recent case of Sausaman v. Leininger, Ind. App. 1956, en banc, 137 N. E. (2d) 547, 551, the defendant driver turned off the ignition and took the key out of the car to let the automobile coast downhill. The steering wheel locked as it was designed to do when the ignition key was removed. The defendant driver was unable to guide the car and the car was wrecked injuring the plaintiff guest. The defendant driver knew that the steering wheel was supposed to lock when the key was removed but since it had failed to lock on two or three prior occasions when he removed the key he thought the lock

was defective and that the steering wheel would not lock when he removed the key.

The plaintiff was awarded a $7,000 verdict by the jury. In reversing the judgment of the lower court the Appellate Court of Indiana said:

"To justify a recovery against appellant, there must have been more than a failure to apprehend the danger of turning off the ignition key and coasting to the garage, in view of the uncontradicted evidence that on prior occasions the wheels had not locked when the ignition was turned off. To have been guilty of either, wilful or wanton misconduct, the appellant must have intentionally proceeded with knowledge of the peril of his conduct that showed a conscious indifference upon his part as to whether or not his act would cause injury. Hoesel v. Cain; [and] Kahler v. Cain, 1943, 222 Ind. 330, 53 N. E. (2d) 165, 769."

In the case of Lee Bros. v. Jones, 1944, en banc, 114 Ind. App. 688, 54 N. E. (2d) 108, the plaintiff guest was riding in a Ford automobile with the defendant driver who was racing with a truck on a four-lane highway. An automobile approaching from the opposite direction crossed the center line of the highway and caused a collison in which the plaintiff was injured. The Appellate Court of Indiana held that the defendant driver of the Ford automobile was not guilty of willful and wanton negligence because he had a right to assume that the approaching automobiles would stay on their side of the highway as the law required. Hence the court held that the driver of the Ford automobile was guilty of only

negligence as distinguished from willful and wanton misconduct.

In these cases at bar when we consider all of the evidence in a light most favorable to the plaintiffs below these facts appear:

The deceased host, Henry Hollingsworth, his son, J. C. Hollingsworth, and two friends, J. C. King, Jr. and Paul Gwaltney, were proceeding from the State of Michigan to their home in Tennessee for a vacation. None of the parties were drinking or misbehaving. Up until the parties had reached a point twelve miles from the accident the deceased, Henry Hollingsworth, had been driving his automobile in a proper manner without any caution or complaints from any of his guests and without any complaints from the Indiana State Trooper who had been driving a patrol car immediately in front of him for a distance of several miles.

The record is silent and devoid of any direct evidence concerning the manner of operation of said automobile by the driver and owner, Henry Hollingsworth, for the next twelve miles down the highway. At a point approximately three hundred yards north of the concrete bridge where the accident happened, there was a highway sign which recited "Slippery when Wet." It was raining and the road, according to the highway sign, was wet and slippery.

The driver, Henry Hollingsworth, did not see or failed to heed the warning from said highway sign. He drove past said sign at a rapid rate of speed up a hill which curved to the left and his automobile ran or slid off the left side of the road onto the left shoulder and ran into

the left banister of the concrete bridge as a result of which the owner, Henry Hollingsworth, and his two guests, J. C. Hollingsworth and J. C. King, Jr. were killed and the plaintiff, Paul Gwaltney, was severely in-jured. The speed limit on the highway at the point where the accident occurred was sixty-five miles per hour.

Trooper Malone estimates the speed of his automo-bile and that of the Hollingsworth automobile at the time he pulled off the main highway at from fifty-five to sixty miles per hour and that only ten minutes elapsed from the time he pulled off the highway in front of the Hol-lingsworth car until he received a call by radio that a car which turned out to be the Hollingsworth car had been wrecked twelve miles down the road. During this interim he had driven about a mile on Highway No. 39, had stopped at a filling station and drunk a coca cola, had resumed driving north on Highway No. 39 in his patrol car and had been driving about five minutes after drinking the coca cola when he received the radio call concerning the wreck. The way he arrives at the ten-minute period is that it took him two minutes to drive the one mile from the intersection of Highway 39 and Highway 67 to the filling station, that he spent only three minutes purchasing and drinking the coca cola and re-suming his duties in the patrol car and that he had re-sumed his duties in the patrol car for an additional period of about five minutes when he got the radio call.

Assuming, but not deciding, that it was competent for the plaintiffs below to establish the speed of the Hol-lingsworth automobile by so many estimates and approxi-mations on the part of Trooper Malone, at the most such testimony would establish that the Hollingsworth car

jumped its speed from about sixty miles an hour to seventy-five or maybe eighty miles per hour on this highway.

So in the final analysis taking plaintiff's testimony in its most favorable light we have proof from which the jury could have found that the deceased, Henry Hollingsworth, drove the last twelve miles down the highway at eighty miles per hour and either failed to see or disregarded a highway road sign three hundred yards north of the concrete bridge reciting "Slippery when Wet" and ran his car off the pavement on the left side of the road and crashed into the end of a concrete bridge causing the injuries above related. Now the question presented is whether or not these facts, if found by the jury, were sufficient to constitute Henry Hollingsworth guilty of willful and wanton misconduct under the terms and provisions of the Indiana Guest Statute.

In our opinion they are not. Since there is no evidence showing the exact cause for the Hollingsworth car striking the bridge, it is necessary to invoke the doctrine of res ipsa loquitur. Under this doctrine, as we said above, in Tennessee a jury is warranted in finding negligence on the part of the driver because such accidents, that is when automobiles leave the road and crash into a bridge or tree, do not usually happen in the absence of some negligence on the part of the operator of the automobile. However, there is a broad difference between finding simple negligence on the part of the driver and finding willful and wanton misconduct as provided by the Indiana Guest Statute.

The general rule is that the doctrine of res ipsa loquitur is not applicable to establish willful and wanton negligence. From Blashfield Cyclopedia of Automobile

Law and Practice—Permanent Edition—Section 6049, we quote:

"In those jurisdictions where a guest's right of action depends upon allegation and proof of willful and wanton negligence, it has been held that the doctrine of res ipsa loquitur does not apply.

"Russell v. Turner, D. C. Iowa, 56 F. Supp. 455, affirmed [8 Cir.] 148 F. (2d) 562—Not applicable under Iowa Automobile Guest Statute—I. C. A. sec. 321.494.

"Cal.—Fiske v. Wilkie, 67 Cal. App. (2d) 440, 154 P. (2d) 725.

"Ga.—Minkovitz v. Fine, 67 Ga. App. 176, 19 S. E. (2d) 561.

"Tenn.—Sloan v. Nevil, 33 Tenn. App. 100, 229 S. W. (2d) 350—Not applicable under Illinois Guest Statute [S. H. A. ch. 95½, sec. 58a]."

From the case of McGinley v. Chancey, Fla. 1954, 70 So. (2d) 357, where the defendant host driver hit a telephone pole injuring the guest, the Supreme Court of Florida said as follows:

"This court is committed to the doctrine that elements showing gross negligence must be proven if one would prevail in a case of this kind. Presumptions, guesses or assumptions as to how it took place will not suffice. Neither will the doctrine of res ipsa loquitur aid the plaintiff. If defendant had blacked out, become paralyzed or was trying to avoid hitting a child, this might have relieved her of gross negligence."

Also in an earlier case of Orme v. Burr, 1946, 157 Fla. 378, 25 So. (2d) 870, four men had left a country club at about 2:00 A. M. and passed a city policeman or highway patrolman at a very, very rapid rate of speed after which the car left the highway and hit a tree killing all four occupants of the car.

The Supreme Court of Florida in that case declined to apply the doctrine of res ipsa loquitur in favor of the administrators of the guests in the automobile against the administrator of the driver of the car. The Supreme Court of Florida said, in substance, that the general instinct for self-preservation which prompts men to exercise care for their own safety negatived a presumption of gross or wanton negligence on the part of the driver simply from the speed of the car and the unexplained reasons for the car leaving the highway and striking the tree.

In the case of Sloan v. Nevil, 1949, 33 Tenn. App. 100, 229 S. W. (2d) 350, 354, the late and lamented Judge Howell of this Court made the following statement:

"It is also insisted for the plaintiff that the doctrine of res ipsa loquitur applies and furnishes an inference of negligence on the part of the defendant.

"The doctrine of res ipsa loquitur would not, if applicable to this case, create an inference of wilful and wanton negligence as contemplated by the Statute."

In that case Judge Howell was referring to the Illinois Guest Statute. However, in the Sloan case the Court of Appeals held that the doctrine of res ipsa loquitur

would not be applicable because there was evidence showing and explaining the cause of the accident.

In the cases at bar we find no evidence, direct or circumstantial, that the deceased, Henry Hollingsworth, or whoever was driving the automobile "proceeded with knowledge of the peril of his conduct that showed a conscious indifference upon his part as to whether or not his act would cause injury." Sausaman v. Leininger, supra [137 N. E. (2d) 551].

Hence, we are constrained to hold that under the Indiana Guest Statute there was no material evidence from which the jury could find deceased, Henry Hollingsworth, guilty of willful and wanton misconduct and that His Honor, the Trial Judge, was in error in submitting these cases to the jury and should have directed a verdict in favor of the defendant in each of the three cases.

Assignment of error No. VII insists that the Trial Judge was in error in failing and refusing to charge defendant's special request No. I. In view of the fact that we have sustained assignment of error No. II and hold that His Honor was in error in submitting any of the cases to the jury the question presented by the assignment of error No. VII has become moot and we think it improper and unnecessary to rule upon this assignment of error.

It follows that the judgments of the lower court in each case will be reversed, the suits dismissed and the plaintiffs below taxed with the costs in the court below and on this appeal.

Avery, P. J. (W. S.), and Bejach, J., concur.