GRADY PATTERSON, Plaintiff-in-Error, v. JOHN SMITH and ROYCE AUSTIN, Defendants-in-Error. —424 S.W.(2d) 204.

Western Section. December 10, 1965.

Certiorari Denied by Supreme Court June 6, 1966.

674

· J. D. Senter, Jr., Humboldt, J. B. Avery, Jr., Alamo, for plaintiff in error.

Theo Emison, Alamo, Waldrop, Hall & Tomlin, Jackson, for defendants in error.

CARNEY, J.  Upon the trial below there was a jury verdict in favor of the defendants, John Smith and Royce Austin. Judgment was entered thereon. Plaintiff Grady Patterson has appealed in error.

On November 12, 1960, the plaintiff Grady Patterson was severely injured when run over by a dump truck owned by defendant Royce Austin and being driven backward by defendant John Smith. The accident occurred at an asphalt plant near Wiggins, Mississippi. Hadley Construction Company of Humboldt, Tennessee, had the contract to blacktop certain highways in Mississippi and had constructed the asphalt plant in which asphalt was mixed, poured into dump trucks and hauled to the highways to be surfaced.

The plaintiff, Patterson, a citizen of Humboldt, Tennessee, was employed as a driver of a dump truck owned by Mr. Austin Pratt, a citizen of Alamo, Tennessee. Defendants Smith and Austin are also citizens of Alamo, Crockett County, Tennessee. Smith was paid a daily wage by Austin and the plaintiff Patterson was paid a daily wage by Mr. Pratt, the owner of the dump truck which he drove. Hadley Construction Company paid Austin and Pratt for the use of their dump trucks and drivers on the basis of so much per ton of asphalt hauled and so much per mile traveled.

On the day of the unfortunate accident both the plaintiff Patterson and the defendant Smith were engaged in hauling the asphalt or blacktop. The asphalt was loaded

into the dump trucks by means of a chute opening in the bottom of a large metal hopper or tank. The hopper was supported by four large iron posts set in concrete. The four posts were set in a square and were twelve feet apart. Generally speaking the hopper faced north. As the trucks were loaded they pulled forward and northward from between the two front iron posts a distance of approximately 150 feet to a platform known as the oiling platform where oil was poured on the asphalt. The trucks were then weighed and left the premises to deliver the asphalt on the highway project.

As the empty trucks came into the area they stopped at an area from 60 to 100 feet in a northwesterly direction from the opening between the front posts under the hopper. The drivers awaited their turn to be loaded. As a loaded truck of asphalt pulled out from under the hopper northward toward the oiling platform an empty truck was then driven backward in a southeasterly direction until it reached a point a few feet directly in front of the entrance between the front posts under the hopper when the truck was straightened out and backed directly between the front posts under the hopper for loading. As stated above the width between the two front posts was twelve feet. The width of the dump beds was 7½ feet which left slightly over two feet clearance on each side of the dump truck as it backed between the front posts and under the chute at the bottom of the hopper.

The dump trucks were equipped with rear view mirrors located on each side of the front door. These mirrors, generally referred to as "Hollywood Mirrors," have been in use by the trucking industry for the past six or seven years. Prior to that time only a rear view mirror located on the left or driver's side of the truck was in use.

On the day of the unfortunate accident the defendant Smith had returned with his empty truck to the asphalt plant, had turned his truck around and had stopped at a point about 75 feet northwest of the hopper while waiting for another truckdriver, the witness Albert E. Santa Cruz, to have his truck loaded with asphalt. The plaintiff, Grady Patterson, entered the area of the asphalt plant after the defendant, John Smith, and parked his truck a little farther away from the entrance to the hopper because it would not be his turn to be loaded until after the defendant Smith had become loaded and had driven out from under the hopper.

An employee of Hadley Construction Company, the witness Benton Hopkins, whose primary duty was that of fireman at the asphalt plant, kept an icebox stocked with Coca Colas and other soft drinks. This icebox was located east of the metal hopper and about 20 feet southeast of the post located at the northeast corner of the base of the hopper. The plaintiff Patterson while awaiting his turn to be loaded walked by the truck of the defendant John Smith, spoke to him and then walked on behind Smith's dump truck down to the northeast post under the hopper. He obtained a bottle of Coca Cola or other soft drink which he proceeded to drink while standing a few feet north of the northeast corner of the foundation of the hopper. While drinking the soft drink he was standing some two or three feet east of the easternmost track of the driveway leading into and under the hopper. The truck of the witness, Santa Cruz, was being loaded with asphalt.

As Santa Cruz pulled his truck northward and forward after being loaded the plaintiff Patterson had his back turned to the north and was facing Mr. Hopkins, the

fireman and operator of the soft drink box. The defendant John Smith, after the truck of Santa Cruz was loaded and had started forward toward the oil platform, got in his truck and started backing toward the hopper. He kept the left door of the cab open and guided his truck without looking through the right rear view mirror but instead gauged his course solely from the left side. Plaintiff Patterson, seeing the witness Santa Cruz drive out from under the hopper and apparently realizing that he would be ready to drive under the hopper as soon as the defendant Smith was loaded, pitched his empty soda pop bottle to Mr. Hopkins. According to his testimony he was run over immediately thereafter by the dump truck being driven by defendant John Smith. The plaintiff contended that the defendant John Smith was backing blind so to speak and unable to keep his dump truck in the regular tracks and got over too far east with the right rear wheel of the dump truck and ran the plaintiff down. The plaintiff Patterson was very severely injured. The rear wheels of the dump truck ran completely over him crushing his ribs and pelvic area. The plaintiff has been rendered completely impotent as a result of the injury and is permanently partially disabled.

The plaintiff charged the defendant John Smith with negligence in failing to keep a proper lookout, in failing to use his rear view mirror on the right side; with negligence in driving his truck out of the regular driveway and up onto the untraveled area where the plaintiff was standing; with negligence in failing to warn the plaintiff that he was backing into the area when the defendant allegedly knew that the plaintiff was in the area; also the plaintiff alleged that the defendant was driving while under the influence of intoxicating liquors.

The defendant John Smith denied all of the allegations of negligence. He testified that he was not drinking and that he regularly backed into the hopper by keeping the left door of the cab of his truck open and guiding his truck by the course of the left rear wheel and that at the time he struck the plaintiff he was in the regular driveway and was not up on the untraveled area east of the regular driveway as contended by the plaintiff and that he had his truck guided so that the left rear corner of the bed of the truck was about two feet east of the northwest post under the hopper and that thus he was correctly aimed into the center of the opening for the regular loading. He denied emphatically that he was drinking on the job though the manager of the plant, Mr. Claybrook, testified that he smelled intoxicating liquors on the breath of the defendant after the accident.

Neither the keeper of the drink box, Mr. Hopkins, nor the driver of the first truck, Mr. Santa Cruz, actually saw the plaintiff struck by the truck. Mr. Hopkins testified that it was the custom of the truckdrivers while waiting their time to be loaded to stand on the plot of ground just east of the regular driveway and north of the northeast post under the hopper where he and Patterson were standing while Patterson drank the Coca Cola. He testified that after chatting with Patterson he, Hopkins, started back toward the drink box after which Patterson called to him; that he turned around and Patterson pitched him the empty Coke bottle; that he, Hopkins, had again started toward the drink box and had taken only a step or two when he heard someone holler; that he turned and saw that the truck had run over Mr. Patterson; and that when he looked around the Smith truck had the back three feet of his dump truck in under the hopper;

that Mr. Patterson was lying between the right back wheel and a middle or "cheater" wheel which is on a dead axle between the front axle and the back axle of the truck. It was the contention of the defendant, John Smith, that the plaintiff, Patterson, was guilty of proximate contributory negligence which was the sole proximate cause of his injuries and that he very carelessly and negligently stepped from a place of safety out into the regular path or driveway leading under the hopper directly in front of the defendant's dump truck causing his own injuries.

■ Since the accident occurred in the State of Mississippi the plaintiff's claim for damages arising out of the accident is controlled and determined by the laws of the State of Mississippi. Schenk v. Gwaltney, 1957, 43 Tenn. App. 459, 309 S.W.2d 424. In Mississippi by statute proximate contributory negligence does not necessarily bar the right of a plaintiff to recover and the jury is allowed to proportion or diminish the amount of the plaintiff's recovery because of his contributory negligence. Such statutes are generally called comparative negligence statutes. His Honor the Trial Judge charged to the jury as follows:

"Proximate contributory negligence, as used in these instructions, means that act or failure to act which immediately contributes to bring about the accident. Now, in connection with contributory negligence which has been mentioned many times in this trial, the Court charges you the following code sections from the Mississippi Code, Annotated:

'Section 1454, entitled "Contributory Negligence no bar to a Recovery of Damages: The Jury may Diminish Damages":

'In all actions hereafter brought for personal injuries, or where such injuries have resulted in death, or damage to property, the fact that the person injured, or the owner of the property, or the person having control over the property may have been guilty of contributory negligence will not bar a recovery, but damages shall be diminished by the jury in proportion to the amount of negligence attributable to the person injured or the owner of the property or the person having control over the property.'

'Section 1455: Negligence a Question for the Jury:

'All questions of negligence or contributory negligence shall be for the jury to determine.'

"Now the Court charges you that, in a suit for personal injuries, under the Mississippi law that contributory negligence is a partial defense, and it bars the right of the plaintiff to recover for the proportion of the damages which is attributable to his own negligence, if any. Where there is no negligence shown on the part of the defendant, and contributory negligence is the sole proximate cause of the injury, there can be no recovery."

The trial jury returned a verdict that they found the defendant Smith guilty of no negligence. The Trial Judge approved this verdict and entered judgment in favor of the defendant Smith and his employer, Austin.

By assignment of error No. 1 plaintiff-in-error insists that the court below erred in refusing to grant a new trial because the evidence showed without contradiction that the defendant Smith was guilty of some negligence as a matter of law and that since contributory negligence on

the part of the plaintiff under Mississippi law did not bar the right of the plaintiff's recovery but only diminished it the plaintiff was entitled to a judgment in some amount.

There was proof in the record that some of the truckdrivers kept their doors to the cab shut and guided the truck backward into and under the hopper by means of the rear view mirrors. There was also proof that other truckdrivers including the defendant, John Smith, were accustomed to backing and guiding their truck backward by opening the left door and guiding the course of the truck by the course of the left rear wheel. We cannot say that the defendant John Smith was guilty of negligence as a matter of law in failing to use the rear view mirrors when he backed his truck under the hopper. This was a matter for the jury to determine.

Whether the defendant, John Smith, was driving under the influence of an intoxicant and whether the defendant, John Smith, struck the plaintiff in the regular driveway or struck him while he was east of the driveway were conflicts in the testimony which had to be resolved by the jury. The jury found all of these issues of fact in favor of the defendant. Therefore, assignment of error No. I is respectfully overruled.

By assignment of error No. II plaintiff-in-error insists that the weight of the evidence preponderates against the defendant and in favor of the plaintiff. He cites and relies upon the case of Cobb v. Williams (1956) 228 Miss. 807, 90 So.2d 17. This assignment of error must be overruled for two reasons: (1) We do not find that the evidence preponderates against the verdict of the jury and in favor of the plaintiff. The evidence is equally balanced that the plaintiff inadvertently stepped from

a place of safety into the driveway and was run over by the right rear wheel of the truck. Plaintiff's witness, Hopkins, stated that when he looked around after plaintiff had cried out, the rear three feet of defendant's truck bed was under the hopper and the plaintiff was lying between the right rear wheel and the "cheater" wheel. We remember no positive evidence other than the testimony of the plaintiff himself that the wheels of defendant's truck were ever out of the regular driveway.

■■ (2) Under our Tennessee appellate practice and procedure this court cannot review the evidence to determine wherein the preponderance lies. If there is material evidence to support the verdict of the jury which has been approved by the Trial Judge then this court must affirm. Friendship Telephone Company v. Russom, 43 Tenn.App. 441, 309 S.W.2d 416. We find it unnecessary to determine whether an appellate court of Mississippi will review the evidence to determine wherein the preponderance lies. We hold that this question is a matter of practice and procedure and that therefore the law of the forum, that is the law of the State of Tennessee, applies even though plaintiff's right to recover is determined by the law of the State of Mississippi because the alleged tort happened within said state. 16 Am.Jur.2d, Conflict of Laws, Section 76, page 120; see also 15A C.J.S. Conflict of Laws sec. 22 (3) on Torts, page 530.

We hold there was ample evidence to support the verdict of the jury that the defendant Smith was not guilty of any negligence. See the Tennessee case of Olson v. Sharpe, 1953, 36 Tenn.App. 557, 259 S.W.2d 867, in which the facts were very similar to the case at bar. In that case the plaintiff Olson, a graduate engineer, was struck and severely injured by a truck hauling hot asphalt

on a highway construction project while being driven backward by a driver who was guiding the backward movement of the truck by leaving the left door of the cab open and watching the course of the left rear wheel. The jury found the driver of the truck free of proximate negligence and found that the proximate cause of the injuries to the plaintiff was the failure of the contractor to furnish a flagman for trucks engaged on the highway construction project.

Both assignments of error are respectfully overruled and the judgment of the lower court is affirmed at the cost of the plaintiff-in-error. Judge Robert Cooper of the eastern section of this Court sat on this case in place of Judge Avery who recused himself because of his close relationship to two of the attorneys.

Bejach and Cooper, JJ., concur.