Earl WINTERS, Appellant,

v.

Sarah C. MAXEY, Appellee.

Gloria Yvonne WINTERS, a minor, by
father and next friend, Earl
Winters, Appellant,

v.

Sarah C. MAXEY, Appellee.

Supreme Court of Tennessee.

June 5, 1972.

Branstetter, Moody & Kilgore, Nashville, for appellants.

B. J. Boyd, Ashland City, for appellee.

## OPINION

DYER, Chief Justice.

The sole question for determination in this case is whether the lex loci delicti doctrine as applied in Tennessee should be continued or whether it should be repudiated in favor of a modern theory.

The plaintiff and defendant are now and were, prior to the accident giving rise to this suit, citizens and residents of Cheatham County, Tennessee. Defendant invited plaintiff to accompany her in defendant's automobile for a trip to Florida where they would have a short vacation and then return to Cheatham County, Tennessee. In the course of this trip, while driving in Chilton County, Alabama, defendant lost control of her automobile striking some parked construction equipment, resulting in injuries to plaintiff.

Plaintiff filed this suit against defendant in Cheatham County, Tennessee, alleging only ordinary negligence as causing her in-

juries and also alleging the law of Tennessee allowing recovery on showing of ordinary negligence would apply to the facts of this case. The parties here stipulated Alabama has a guest statute which, if Alabama law applies, would require a showing of willful or wanton conduct on the part of defendant before plaintiff could recover. The trial judge applying our lex loci doctrine has dismissed the case, resulting in this appeal by plaintiff.

In regard to torts the rule has long prevailed in Tennessee that absent public policy the law of the place where the tort occurred would control. East Tenn., V. & G. R. Co. v. Lewis, 89 Tenn. 235, 14 S.W. 603 (1890); Brown v. Hogan, 14 Tenn. App. 251 (1931); Parsons v. American Trust & Banking Co., 168 Tenn. 49, 73 S.W.2d 698 (1934); Kennard v. Illinois Cent. R. R., 177 Tenn. 311, 148 S.W.2d 1017, 134 A.L.R. 770 (1941); Sloan v. Nevil, 33 Tenn.App. 100, 229 S.W.2d 350 (1949); Schenk v. Gwaltney, 43 Tenn.App. 459, 309 S.W.2d 424 (1957); Glover v. Glover, 44 Tenn.App. 712, 319 S.W.2d 238 (1958); Patterson v. Smith, 57 Tenn.App. 673, 424 S.W.2d 204 (1966).

The public policy exception to this rule is where the law of the jurisdiction where the tort occurred is against good morals or natural justice, or for some other reason, its enforcement would be prejudicial to the general interests of our citizens. Whitlow v. N., C. & St. L. Ry. Co., 114 Tenn. 344, 84 S.W. 618 (1904). This Alabama guest statute does not offend good morals or justice nor would its enforcement be prejudicial to the general interests of our citizens.

The lex loci doctrine had its conceptual foundation in the vested rights doctrine, namely that the right to recover for a foreign tort owes its creation to the law of the jurisdiction where the injury occurred and depends for its existence and extent solely on such law. Such has been the rule in most all jurisdictions in this country until in recent years some jurisdictions have rejected the rule in favor of what is designated as the modern rule.

New York in Babcock v. Jackson, 12 N. Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279, 95 A.L.R.2d 1 (1963), repudiated the lex loci rule long prevailing in that state in favor of the rule designated as the "dominant contacts" rule.

*Babcock* involved New York residents, the plaintiff as a guest passenger in the defendant-host's automobile on a short trip from New York to Ontario and return. During the course of the trip, while in Ontario, defendant apparently lost control of the automobile striking a stone wall, resulting in injuries to plaintiff for which suit was brought in New York. Under the laws of New York such an action was maintainable, but in Ontario such an action was, in effect, prohibited. In holding the law of New York should apply the court did so upon the premise justice, fairness and the best practical results would be achieved in tort cases having multi-state contacts by giving controlling effect to the law of the jurisdiction, which, because of its relationship or contact with the occurrence or parties, has the greatest concern with the specific issue raised in the litigation.

The specific issue in *Babcock* resulting from the multi-state contacts was the application or non-application of Ontario's guest statute. In applying this rule of "dominant contacts" resulting in the holding New York law would apply, the court did so on the grounds the parties were New York residents as a trip that began in New York and was to end in New York. The court noted the only contact Ontario had with the parties was the fact the accident occurred in Ontario itself, a fortuitous event.

A later New York case of Dym v. Gordon, 16 N.Y.2d 120, 262 N.Y.S.2d 463, 209 N.E.2d 792 (1965), involving the same issue as Babcock v. Jackson, *supra,* the court applying the "dominant contacts" rule held

the law of the jurisdiction where the tort occurred would control.

The *Dym* case involved two New York domiciliaries attending summer school in Colorado. While in Colorado the guest plaintiff went on a short trip in the host-defendant's automobile, during which an accident occurred, resulting in plaintiff's injuries for which suit was brought in New York. The court finding Colorado law would apply said: ·

Of compelling importance in this case is the fact that here the parties had come to rest in the State of Colorado and had chosen to live their daily lives under the protective arm of Colorado law. Having accepted the benefits of that law for such a prolonged period, it is spurious to maintain that Colorado has no interest in the relationship which was formed there.

A year after Dym v. Gordon, *supra,* the New York courts decided Kell v. Henderson, 26 A.D.2d 595, 270 N.Y.S.2d 552 (1966). In the *Kell* case all of the parties were residents of Ontario on an automobile trip from Ontario with the intention the trip end in Ontario. During the course of this trip an accident occurred in New York, resulting in injuries to the guest plaintiff for which suit was brought against the host-defendant in New York. On the issue of whether New York or Ontario law applied, it appears this is the exact factual situation in reverse as was in Babcock v. Jackson, *supra,* and the law of Ontario would apply since the only contact New York had with the matter was that the unintentional tort, by happenstance, occurred in New York.

The court in *Kell* rejected the argument. The case was controlled by Babcock v. Jackson, *supra,* and said:

Babcock was not intended to and did not change the established law of the State of New York that a guest has a cause of action for personal injuries against a host in an accident occurring in this State whether those involved are residents or domiciliaries of this State or not.

While the *Kell* case is not an opinion of the highest court in New York, it does cause us to wonder if the rule in Babcock v. Jackson, *supra,* is to be applied both ways.

Wilcox v. Wilcox, 26 Wis.2d 617, 133 N.W.2d 408 (1965), repudiated the lex loci rule in favor of the dominant contacts rule.

*Wilcox* involved a husband and wife, residents of Wisconsin, who were involved in an automobile accident resulting in injuries to the wife, which accident occurred in Nebraska when the parties were returning to Wisconsin from a vacation. The wife brought suit against the husband in Wisconsin. Nebraska had a host-guest statute requiring the proof of gross negligence for recovery, while Wisconsin allowed recovery on proof of ordinary negligence. This variance in the laws of these states made the conflicts question. The court held under these facts Wisconsin had the more "dominant contacts" and the law of Wisconsin should apply.

In *Wilcox* the court in repudiating the lex loci rule was impressed by the fact the place of occurrence of an unintentional tort is fortuitous and it is by mere happenstance that the lex loci state is concerned at all.

The method of analysis of the "dominant contacts" as applied by the Wisconsin court in Wilcox v. Wilcox, *supra,* is different from the method adopted by New York in Babcock v. Jackson, *supra.* In *Babcock* the court considered as the appropriate method that given in Restatement, Conflicts of Law § 379, which suggests a quantitative approach and lists important contacts, such as (1) place of injury, (2) place of conduct, (3) domicile, (4) nationality, (5) place of incorporation and place of business, and (6) the place the parties relationship is centered. New York examines these contacts in order of their impor-

tance on an equal plane between the state involved. The Wisconsin court begins with a rebuttable presumption in favor of the forum state and utilizes the contacts in order of their importance to remove the presumption.

The Wisconsin court in Conklin v. Horner, 38 Wis.2d 468, 157 N.W.2d 579 (1968), was presented with a very similar factual situation as was presented in Wilcox v. Wilcox, *supra*. In *Conklin* the parties involved were all residents of Illinois who began an automobile trip in Illinois with the intention the trip would end in Illinois. While traveling in Wisconsin an accident occurred, resulting in injuries to the plaintiff guest who brought suit in Wisconsin against the host-defendant. The conflicts question was whether to apply the Illinois law requiring proof of gross negligence or the Wisconsin law requiring proof of only ordinary negligence. The court, by majority opinion, held Wisconsin law would apply.

Under these facts it would appear, as the minority opinion points out, the *Conklin* case would be controlled by Wilcox v. Wilcox, *supra,* and the law of Illinois applied. The parties in *Conklin,* as in *Wilcox,* were all residents of one state where the journey began and was to end, and by happenstance an accident occurred in another state.

The majority opinion in *Conklin* noted there was one factual difference between the *Conklin* case and the *Wilcox* case; that is, in the *Wilcox* case the tort occurred in Nebraska, and the forum was in Wisconsin, while in the *Conklin* case the tort and the forum were both in Wisconsin. Applying its analysis method of beginning with a rebuttable presumption in favor of the forum state, the majority found both Illinois and Wisconsin had substantial contacts and the law of either state could apply. The majority opinion then proceeded to examine what is termed "choice influencing consideration" and in doing so came to the conclusion the specific Illinois law involved was enacted for the

protection of Illinois citizens in Illinois and was not so vital a policy as Wisconsin's law which allows recovery in such cases in order to induce safe driving on the highways. The majority also found the Wisconsin law to be the "better law" to apply under the circumstances.

There are a number of other states that have repudiated the lex loci rule, but we do not deem it necessary to go into an analysis of these cases. Our research indicates the following states have adopted some form of "analysis of contacts" rule in application of conflict of law in tort cases. These states are Alaska, Arizona, California, District of Columbia, Indiana, Iowa, Kentucky, Minnesota, Mississippi, New Hampshire, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, and Wisconsin.

In our examination of this matter we are convinced that there is one very strong reason we should not repudiate the present rule in Tennessee. In Wilcox v. Wilcox, *supra,* the court in adopting the dominant contacts rule said:

On a case by case basis generalizations will soon become apparent and will take its place as a guide to the future to provide a *uniform common law of conflicts.* 26 Wis.2d at 635, 133 N.W.2d at 417 (Emphasis supplied)

In our examination of cases using the "dominant contacts" rule, we have not been able to discern they provide any "uniform common law of conflicts" to take the place of the uniform rule of lex loci delicti. As an example, in the cases we have used in this opinion under the method of analysis used in New York in a given factual situation, one result could be reached, while under the method of analysis used by Wisconsin a different result would be reached.

In Abendschein v. Farrell, 382 Mich. 510, 170 N.W.2d 137 (1969), the court was faced with this issue of repudiating its long standing rule of lex loci in favor of the "dominant contacts" rule. The court

in rejecting the argument to change the rule said:

> That rule [lex loci] has been settled unanimously, understood thoroughly, and thought to be as fair to all affected thereby as man might reasonably conceive unless, of course, we are to make equity causes out of law actions. In a word, the law applicable to the presently reviewed question is the rule stare decisis; a rule all of us are supposed to follow save only when persuasion leads to abiding conviction that some undeniably better rule is available for proper supersession. There is no such persuasion, since the quagmire of unanswered and perceivably unanswerable questions arising out of the proposed new doctrine appears less attractive than our admittedly hard and fast—and occasionally unjust it is true—rule that the law of the place of the wrong is applied when the forum is a Michigan court. 382 Mich. at 516, 170 N.W.2d at 139.

The judgment of the lower court is affirmed.

CRESON and McCANLESS, JJ., and JENKINS, Special Justice, concur.

HUMPHREYS, J., dissents.

HUMPHREYS, Justice (dissenting).

I respectfully dissent. Under the recognized exception to the lex loci delicti rule, that foreign laws contrary to the public policy of this State will not be enforced here, we should hold that the Alabama guest statute does not apply in Tennessee.

The majority opinion recognizes the public policy exception, citing Whitlow v. N., C. & St. L. Ry. Co., 114 Tenn. 344, 84 S.W. 618 (1904), and makes use of the definition of public policy to be found therein. This definition is that a foreign law will not be enforced that is against good morals or natural justice, or that for some other reason, the enforcement of it, would be prejudicial to the general interest of the citizens of the State. Hardly pausing for a breath, the majority opinion proceeds to declare that the Alabama guest statute is not against good morals, is not against natural justice, and that its enforcement would not be prejudicial to the general interest of the citizens of the State. With this conclusion I must disagree.

I disagree, because both good morals and natural justice demand that one who carelessly injures another in the operation of a motor vehicle, which, while not a dangerous instrumentality by legal definition, is in its operation fraught with such danger that the operator who fails to exercise ordinary care, should be required to respond in damages.

While I recognize the right of Alabama to treat its own citizens in the way it has, I do not think this state is obligated to enforce such a statute in an action between two of its citizens who were only casually and incidentally in Alabama, under circumstances that do not indicate they even knew of the guest statute, much less intended to be bound thereby. And this is particularly true since Alabama has no interest whatsoever in the enforcement of its regressive law in Tennessee.

Not only is this against natural justice and good morals, it is contrary to the express public policy of this State. The General Assembly has had before it the example of a few other states in limiting automobile host liability to wilful or wanton negligence, and, (unless my memory disserves me, there is no index or digest where I can look this up), bills have been introduced in the General Assembly in the past to enact this guest rule into law in this State. But, whether I am right in my recollection or not, the proposition remains that with the example of other states, and with the power to enact such a law, the General Assembly has not done so. This non-action amounts to an election by it to continue under the better rule of liability.

And anything that is contrary to that rule, I submit, is contrary to the public policy of this State.

In sum, we should hold that the Alabama law limiting liability is contrary to the better Tennessee law on the subject and will not be enforced by our courts as against the public policy of this State.

I know that a great deal has been written in a number of opinions in other states on the conflict of law question which has arisen in this case. And I find that a general conflict of law principle thereon has been stated in Restatement, Conflict of Laws, § 145, as follows:

"§ 145. *The General Principle*

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

(a) the place where the injury occurred

(b) the place where the conduct causing the injury occurred

(c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue."

There is also an interesting discussion of this subject in 21 Vanderbilt Law Review, March 1968, at p. 266; and an annotation in 29 A.L.R. 3d, p. 603. And, while I think the adoption of a general rule such as that in Restatement is inevitable as our society grows more mobile and the interest of the State in its citizens ever increases, I am content, for the present, to base my disagreement with the majority on its failure to recognize that the Alabama guest statute is contrary to justice, is contrary to good morals, and is contrary to the policy of this State as that policy is exemplified by the longstanding law of this State which permits a passenger who is injured in an automobile collision to recover of his host where he has not exercised ordinary care. Such a law as Alabama's should not be enforced between two Tennesseans and I dissent from its enforcement.